# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| 1ST SOURCE BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:11-CV-205-TLS |
| | ) | |
| VILLAGE OF STEVENSVILLE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss for Lack of Personal Jurisdiction

[ECF No. 40] and Brief in Support [ECF No. 41] filed by Defendants Steve Hinrichs, Kim

Peters, Donald Schlipp, Don Meyer, Pat Arter, Ken Hansen, Steve Slavicek, Shirley

Kerlikowske, and Lori Gibson on October 31, 2011. The Plaintiff, 1st Source Bank, filed a

Response in Opposition to the Defendants' Motion [ECF No. 45] on November 17, 2011. On

December 1, 2011, the Defendants filed a Motion for Leave to File Supplemental Brief and

Reply Brief [ECF No. 51], which included their Supplemental Brief [ECF No. 51-1] and Reply

Brief in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [ECF No.

51-3].The Plaintiff did not oppose the Defendants' Motion for Leave to File Supplemental Brief

and Reply Brief. On December 6, 2011, Defendant Dawn Rush filed a Joinder to Co-Defendants'

Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 53]. On December 23, 2011, the

Plaintiff filed a Response in Opposition to Defendant Rush's Motion [ECF No. 54].[1]

---

[1] The parties have proceeded to file motions for summary judgment on the breach of contract claim against the Village in Count 1 of the First Amended Complaint. On May 9, 2012, the Plaintiff filed its Motion for Summary Judgment [ECF No. 69] and Memorandum Supporting Plaintiff's Motion for Summary Judgment [ECF No. 69-1]. On June 5, 2012, the Defendants filed a Cross-Motion for Summary Judgment [ECF No. 71] and Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment [ECF No. 70].

## BACKGROUND

This diversity action arises out of a series of loans made by the Plaintiff to the Village of Stevensville, Michigan (the Village) and the Village of Stevensville Downtown Development Authority (DDA) (collectively Stevensville). In 2010, the Village and the DDA defaulted on those loans. The Plaintiff, a bank organized and existing under the laws of Indiana and located in Indiana, then brought the present suit to enforce its rights under the loan agreements.

Defendants Steve Hinrichs, Kim Peters, Donald Schlipp, Don Meyer, Pat Arter, Ken Hansen, Steve Slavicek, and Lori Gibson are all former or current members of the Stevensville Village Council (collectively Council members). Shirley Kerlikowske is a former member of the DDA. Dawn Rush is the former Treasurer for the Village. In its Amended Complaint [ECF No. 14], the Plaintiff raises claims of intentional or negligent misrepresentation against the aforementioned Defendants in their individual capacities. The Defendants now move for dismissal of the Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that this Court lacks personal jurisdiction over the individual Defendants.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) seeks dismissal of a claim where personal jurisdiction is lacking. Once the defendant moves to dismiss under Rule 12(b) (2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S .A.*, 338 F.3d 773, 782 (7th Cir. 2003). The difficulty of meeting this burden depends on the method by which a court resolves the issue of personal jurisdiction. *Id.* "When the . . . court holds an evidentiary hearing to determine

[personal] jurisdiction, the plaintiff must establish [personal] jurisdiction by a preponderance of the evidence." *Id.* But where, as here, the court determines personal jurisdiction based only on reference to submissions of written materials, the plaintiff simply needs to make a prima facie case of personal jurisdiction. *GCIU–Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). In determining whether the plaintiff has met the prima facie standard, a plaintiff is entitled to a favorable resolution of all disputed relevant facts. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010). However, if a defendant submits evidence in opposition to a finding of personal jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 782–83. This evidence submitted by a defendant may include affidavits unless the affidavits merely contain conclusory assertions that the court lacks personal jurisdiction over the defendant. *Id.* at 783 n.13 (citing *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

## ANALYSIS

### A.    Applicable Law

"A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue*, 338 F.3d at 779. A district court must undertake and satisfy a two-step analysis in order to determine whether a state court would have personal jurisdiction over a non-resident defendant. First, the exercise of personal jurisdiction must comport with the state's long-arm statute; second, the exercise must comport with the Due Process Clause of the Fourteenth Amendment. *Id.* Because Indiana's

long-arm statute, Indiana Trial Rule 4.4(a), "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the [f]ederal Due Process Clause," *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006), the Court only needs to consider the second step of the analysis.

Due process requires that a defendant have "'certain minimum contacts' with the forum [state] such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). These minimum contacts "must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Such purposeful availment is required to ensure that defendants may reasonably anticipate what conduct will subject them to the jurisdiction of a foreign sovereign. *Burger King*, 471 U.S. at 472.

Personal jurisdiction may be either specific or general, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011), but only specific jurisdiction needs to be considered here.[2] "Specific jurisdiction is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself." *Abelesz*, 692 F.3d at 654 (citing *Goodyear*, 131 S.Ct. at 2851). The Seventh Circuit instructs that specific jurisdiction is appropriate where: (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting

---

[2] Neither party contends that the Defendants are subject to general jurisdiction.

4

business in that state; (2) the alleged injury arises out of the defendant's forum-related activities; and (3) the exercise of specific jurisdiction comports with traditional notions of fair play and substantial justice. *See Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

### 1. *Purposeful Direction/Purposeful Availment*

An analysis of the purposeful direction or purposeful availment factor is dependent on the type of claim at issue. *Id.* at 674. In the present case, the Plaintiff alleges that the individual Defendants engaged in intentional or negligent misrepresentation because of their representations to the Plaintiff that the Village Council was authorized to approve the loan from the Plaintiff to the Village. "Where a plaintiff's claim is for an intentional tort, 'the inquiry focuses on whether the conduct underlying the claim[ ] was purposely directed at the forum state.'" *Id.* (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010)). The Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), provides a framework for a purposeful direction analysis in cases involving intentional torts. The Seventh Circuit in *Felland* and *Tamburo* has identified three factors necessary to establish that tortious conduct was "purposefully directed" at the forum state: "'(1) intentional conduct (or intentional and allegedly tortious conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state.'" *Felland*, 682 F.3d at 674–75 (quoting *Tamburo*, 601 F.3d at 703) (internal quotation marks omitted). There is significant overlap in the analysis of the second and third requirements. *Tamburo*, 601 F.3d at 704.

## 2. *Injury Arises Out of the Defendant's Forum-related Activities*

If a defendant's conduct is purposefully directed to a forum state, the plaintiff must also demonstrate that its injury "arises out of" or "relates to" the actions of the defendant. *Felland*, 682 F.3d at 676 (quoting *Tamburo*, 601 F.3d at 708). As the *Felland* court noted, "the Supreme Court has not elaborated on the details of this requirement." 682 F.3d at 676. Circuit courts have split on how close the causal connection between a defendant's actions and a plaintiff's injury must be. *Id.* The Seventh Circuit has expressed that a "but for" causal relationship is insufficient to satisfy this requirement, but has not definitively resolved the issue. *Id.* at 676–77.

## 3. *Traditional Notions of Fair Play and Substantial Justice*

Finally, courts are required to consider whether the exercise of personal jurisdiction over a non-resident defendant would offend traditional notions of fair play and substantial justice. *Id.* at 677 (citing *Int'l Shoe*, 326 U.S. at 316). This inquiry requires courts to consider a variety of factors, including: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Felland*, 682 F.3d at 677 (citing *Burger King*, 471 U.S. at 477) (internal quotation marks omitted). In this analysis, a court is instructed to apply a sliding-scale test: "the weaker the defendant's contacts with the forum state are, the less likely it is that exercising jurisdiction over that defendant is appropriate." *Illinois v. Hemi Group LLC*, 622 F.3d 754, 759–60 (7th Cir. 2010) (citing *Purdue*, 338 F.3d at 781). These factors "'rarely will justify a determination against personal jurisdiction'

because there are other mechanisms available to the court-such as choice of law and transfer of venue-to accommodate the various interests at play." *Hemi Group LLC*, 622 F.3d at 760 (quoting *Purdue*, 338 F.3d at 781 n.10).

**B.      Application of Applicable Law**

Counsel for the Defendants separates the individual Defendants into two general categories for purposes of the personal jurisdiction analysis: one group of individuals whose actions in this case were limited to voting to approve the loans from the Plaintiff and another group of individuals who had additional contacts with the Plaintiff beyond voting to approve the loans. The Plaintiff contends that neither group of individuals had sufficient minimum contacts with Indiana to support the exercise of personal jurisdiction. Nonetheless, for the sake of analytical clarity, the Court evaluates each individual Defendant's contacts with Indiana to determine whether it may exercise personal jurisdiction over the named Defendants.

**1.      *Don Schlipp***

The Defendants argue that this Court is without a basis to assert personal jurisdiction over Defendant Schlipp[3] because he lacks sufficient minimal contacts with the state of Indiana. (Defs.' Mot. to Dismiss for Lack of Jurisdiction 7.) In support of this argument, Defendants submitted an affidavit from Defendant Schlipp attesting to de minimis contacts with the state of Indiana, particularly in relation to the loans from the Plaintiff. (Schlipp Aff., ECF No. 41-1 at

---

[3] The Defendants group Defendant Schlipp with Defendant Hinrich, Defendant Hansen, and Defendant Slavicek. (Br. in Supp. of Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction 7, ECF No. 41.) These Defendants voted to authorize the Village to extend the loans from the Village and commit to repaying the loans but did not have any contact with the Plaintiff's representatives.

7

6–7.) According to the Defendants, Defendant Schlipp had no personal meetings, telephone conversations, or e-mail exchanges with employees or agents of the Plaintiff. (Br. in Supp. of Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction 7.) The Plaintiff contends that the Defendants have minimized Defendant Schlipp's actions in this case, citing multiple instances in which Defendant Schlipp voted to authorize the Village to obtain a loan or voted to authorize the Village to obtain an extension on the loans from the Plaintiff. (Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction 3–4, 6, ECF No. 45.) In the Plaintiff's view, Defendant Schlipp, along with the other individual Defendants, purposefully directed his actions as a Village Councilmember towards the Plaintiff in Indiana. (*Id.* 10.) In their Reply, the Defendants assert that their votes as Village Councilmembers were "not directed to Indiana, but to the Village of Stevensville, Michigan." (Reply in Supp. of Defs.' Mot. to Dismiss for Lack of Jurisdiction 2, ECF No. 51-3.)

a.   *Purposefully Directed*

As articulated above, in order to establish that a defendant's tortious conduct was "purposefully directed" at the forum state, a plaintiff must allege facts demonstrating: "(1) intentional conduct (or intentional and allegedly tortious conduct)" on the part of the defendant; "(2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Felland*, 682 F.3d at 674–75 (quoting *Tamburo*, 601 F.3d at 703) (internal quotation marks omitted). The first and third requirements of this test are easily met in this case. As alleged in the Amended Complaint, Defendant Schlipp voted to authorize the Village to obtain a loan (Back Aff. ¶ 6, ECF No. 45-1);

voted to authorize the Village to seek multiple extensions of the loans from the Plaintiff (*Id.* ¶¶ 12, 14, 24); voted to authorize Defendants Gibson, Rush, Peters, and Kerlikowske to sign loan documents with the Plaintiff (*Id.* ¶ 27); and voted to approve an affirmative defense in the instant lawsuit, based on an asserted lack of legal authority to enter into a loan agreement with the Plaintiff (Minutes from May 25, 2011, Special Council Meeting, ECF No. 45-2). These actions serve as the basis for the Plaintiff's claim against Defendant Schlipp and are sufficient to establish intentional conduct on the part of Defendant Schlipp.

As to the third requirement, the Defendants do not contest that the effects of their actions would be felt in Indiana. Defendant Schlipp and the other Councilmembers knew that the Plaintiff was an Indiana resident. Defendant Schlipp participated in Council discussions on the subject of the loans from the Plaintiff and authorized the Village to seek extensions of those loans, to affirm the Village's obligation to repay those loans, and to raise an affirmative legal defense, denying the Village's legal authority to repay those loans.

The real issue at hand is whether Defendant Schlipp's actions (and those of the other individual Councilmembers) were "expressly aimed at the forum state." *Felland*, 682 F.3d at 675. The parties offer competing arguments concerning this issue. According to the Defendants, "none" of the council members' actions were directed at Indiana. (Defs.' Br. in Supp. of Mot. to Dismiss for Lack of Personal Jurisdiction 5.) Instead, the Defendants contend that in voting to authorize the loans, the Councilmembers, in their official legislative capacities, directed their actions at the Village and the Village's residents. (*Id.*) In its Response, the Plaintiff challenges this conclusion, stating that "the individual defendants who comprised the Village Council, when voting on the resolutions, knew and intended that their votes would have an effect beyond

Michigan; in jurisdictional parlance, they 'purposefully directed' their votes at 1st Source in Indiana." (Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss 10.) In their Reply, the Defendants reiterate that they had limited contact with the state of Indiana. (Reply in Supp. of Defs.' Mot. to Dismiss for Lack of Jurisdiction 4–5.) Further, the Defendants emphasize that the Plaintiff's argument "conflates the Individual Council members with the Village itself, treating them interchangeably for the purpose of establishing personal jurisdiction." (*Id.* 6.) Because the Councilmembers acted in their official capacity as legislators, the Defendants assert that they have not purposely availed themselves of the privilege of conducting business in Indiana. (*Id.* 6–7.) Neither party has identified case law addressing the specific issues at hand.

Here, it is important to distinguish between a vote authorizing the Village or its representative to generally engage in commercial activity versus a vote authorizing the Village or its representatives to complete a specific commercial transaction. With the evidence available to the Court, a common sense distinction can be made between the Councilmembers' vote to authorize the Village to obtain loans in general, and the Councilmembers' votes to authorize the Village to extend the loans with the Plaintiff, reaffirm its commitment to repay the loans to the Plaintiff, and to raise an affirmative defense to the Plaintiff's claim for repayment.

The Plaintiff contends that the Councilmembers' original vote that authorized the Village to obtain a loan was expressly aimed at the Plaintiff in Indiana:

> Gardner [the Village Manager] made the initial contact with 1st Source and signed the first sets of loan documents with 1st Source on behalf of the Village . . . . Gardner was not acting alone when he approached 1st Source about obtaining commercial loans for the Village. The Village's governing body, the Village Council, had expressly authorized Gardner to do so. On December 21, 2006, the Village Council gave Gardner the authority to obtain the loans by unanimous vote. Voting in favor of authorizing Gardner to seek the loans were Council Members Steve Hinrichs, Kim Peters, Donald Schlipp, Don Meyer, Pat Arter, and Lori Gibson.

After the vote, the Village faxed the resolution memorializing the authorization to 1st Source in Indiana. 1st Source relied on that resolution when it funded the loans.

(Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss 2–3 (footnotes omitted).) The Plaintiff's pleadings are ambiguous about what specifically the Councilmembers authorized by their December 21 vote. On the face of the pleadings, the Plaintiff appears to argue that, by their December 21 vote, the Defendants authorized Gardner and the Village to obtain a loan from the Plaintiff, and, in so doing, expressly aimed their conduct at the Plaintiff in Indiana.

However, upon a careful review of the record, the Court finds that this reading is unsupported by the facts in evidence. In support of its Amended Complaint, the Plaintiff submitted a copy of the Resolution approved by the Councilmembers on December 21, 2006, entitled "Village of Stevensville Resolution to Obtain Revolving Line of Credit." (December 2006 Resolution, ECF No. 14-1.) The Resolution authorized the Village "to obtain a line of credit of up to $1,000,000 to finance projects that directly benefit the Village." (*Id.*) Up to $700,000 could be used to develop the downtown district and up to $300,000 could be used to make capital improvements and repairs to Village property. (*Id.*) The Resolution specifically authorized "the Village Manager to seek a line of credit . . . upon the most competitive terms available from *any public or private lending institution.*" (*Id.* (emphasis added).)

With their votes, the Councilmembers authorized the Village, through Gardner, to perform a general action and obtain a commercial loan. The Resolution did not identify a specific lending institution from which the loan was to be obtained or the forum where the lending institution was required to be located. Nor has the Plaintiff identified any evidence that would support its position that the Councilmembers' votes authorizing the Village to obtain a loan was expressly aimed at the state of Indiana. By the terms of the Resolution, the Village

could have obtained a loan from a public or private lending institution in California or Maine so long as the loan was "upon the most competitive terms." Nothing in the record suggests that the Councilmembers' votes were expressly aimed at Indiana or any other state. Consequently, the Court finds Defendant Schlipp's vote authorizing the Village to obtain a commercial loan from any public or private lending institution was not aimed at Indiana and does not support the Plaintiff's claim of personal jurisdiction.

Nonetheless, Defendant Schlipp's actions following this initial vote support a finding of "purposeful direction." On December 23, 2008, Defendant Schlipp, along with other members of the Council, voted to authorize the Village to obtain a ninety-day extension on the loans from the Plaintiff. (December 2008 Resolution, ECF No. 14-5.) After the departure of Gardner from his position as Village Manager, on June 18, 2009, Defendant Schlipp, along with other members of the Council, voted to authorize the Village to obtain a 180-day extension on the loans from the Plaintiff. (June 2009 Resolution, ECF No. 45-1 at 32.) To facilitate the extension of the loan agreement with the Plaintiff, on July 16, 2009, Defendant Schlipp, along with other members of the Council, voted to approve a resolution declaring that Trustee Kim Peters, Treasurer Dawn Rush, DDA Member Shirley Kerlikowske, and Village President Lori Gibson had the authority "to sign revolving line of credit documents for 1st Source Bank on behalf of the [Village and DDA]." (July 2009 Resolution, ECF No. 14-13.) On January 10, 2010, Defendant Schlipp, along with other members of the Council, voted to authorize the Village to obtain another extension on the loans from the Plaintiff. (January 2010 Resolution, ECF No. 14-11 at 3–4.) The Plaintiff subsequently filed the instant lawsuit on May 13, 2011. Following the filing of this lawsuit, on May 25, 2011, Defendant Schlipp, along with other members of the Council, voted to approve an

affirmative defense in the instant lawsuit, based on an asserted lack of legal authority to enter into a loan agreement with the Plaintiff. (Minutes of May 25, 2011, Special Council Meeting, ECF No. 45-2.)

The Defendants maintain that the aforementioned actions of Defendant Schlipp and other Councilmembers were directed at the Village in the state of Michigan. The Court finds this argument unavailing. A decision endorsing the Defendant's argument would place an artificial limitation on the requirement that a defendant's actions be "expressly aimed at the forum state." Here, Defendant Schlipp repeatedly voted in favor of obtaining extensions on loans *from the Plaintiff* and authorizing Village Officers to commit the Village to repaying the loans *from the Plaintiff*.[4] Defendant Schlipp and the other Councilmembers intended to authorize the Village to engage in a series of commercial transactions, but they did so with the ultimate purpose of obtaining and extending loans from the Plaintiff in Indiana.

"In all cases the point of the purposeful-direction requirement is to 'ensure that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state.'" *Tamburo*, 601 F.3d at 702 (quoting *Dudnikov*, 514 F.3d at 1071) (internal quotation marks omitted). The record does not support the Defendants' argument that the Defendants' actions and the resulting contacts with the Plaintiff were

---

[4] To borrow an analogy from the Tenth Circuit's decision in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), cited favorably by the Seventh Circuit in *Tamburo*, 601 F.3d at 707, Defendant Schlipp's conduct in the present case was akin to a bank shot in basketball. "A player who shoots the ball off of the backboard intends to hit the backboard, but he does so in the service of his further intention of putting the ball into the basket." *Dudnikov*, 514 F.3d at 1075. Defendant Schlipp's express aim can be said to have reached into Indiana "in much the same way that a basketball player's express aim in shooting off of the backboard is not simply to hit the backboard, but to make a basket." *Id.* Although Defendant Schlipp's actions as a Councilmember were initially aimed at the Village, his ultimate target was the Plaintiff in Indiana.

13

somehow random or fortuitous. Rather, the record indicates that, over a period of four years, Defendant Schlipp and the other members of the Village Council engaged in a series of actions directed at the Plaintiff in Indiana for the purpose of obtaining and extending commercial loans. Therefore, the Court finds that the Plaintiff has satisfied the "purposeful direction" requirement.

b.  *Injury "Arises Out of" the Defendant's Contacts With the Forum State*

If a defendant's conduct is purposefully directed to a forum state, the plaintiff must also demonstrate that its injury "arises out of" or "relates to" the actions of the defendant. *Felland*, 682 F.3d at 676 (citing *Tamburo*, 601 F.3d at 708). Here, the Plaintiff's complaint is sufficient to satisfy even the strictest understanding of the "arises out of" requirement. The Plaintiff contends that its injuries in this case are a direct result of the Defendants' alleged misrepresentations that the Village had the legal authority to contract for a commercial loan. As Council members, the Defendants' actions in facilitating the loan between the Village and the Plaintiff "were not just incidental but are central," *Felland*, 682 F.3d at 677, to the Plaintiff's claim of misrepresentation. The Court has already concluded that Defendant Schlipp expressly aimed his allegedly tortious conduct at the Plaintiff in Indiana with the knowledge that any injury suffered by the Plaintiff would be incurred in Indiana. Although the Seventh Circuit has cast doubt on the premise that a "but for" causal relationship is sufficient to satisfy the "arises out of" requirement, *id.* at 676–77 (citing *GCIU–Employer Ret. Fund*, 565 F.3d at 1025), here, the Defendants' actions are sufficient as evidence of both the proximate *and* factual cause of the Plaintiff's alleged injury. That is, the Plaintiff's claims arise directly out of the individual defendants' contacts with Indiana. Therefore, the Court finds that the Plaintiff's injury "arises out of" the Defendants'

contacts with Indiana.

c.  *Traditional Notions of Fair Play and Substantial Justice*

i.  Burden on the Defendants

In its Response, the Plaintiff argues that the litigation of the present case in the Northern District of Indiana will impose only a "slight" burden on the individual Defendants. (Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss 14.) In support of this argument, the Plaintiff emphasizes that Stevensville, Michigan, is located only 35 miles from the federal courthouse in South Bend. (*Id.*) In their Reply, the Defendants contend that litigating this case in the Northern District of Indiana would impose a "significant" burden on them because they would be "brought into a foreign jurisdiction to face personal liability for actions taken in Michigan, as Michigan legislators, with respect to a Michigan municipal entity." (Reply in Supp. of Defs.' Mot. to Dismiss 7.) The Defendants assert that "[t]he physical distance between Stevensville and Indiana is not at issue." (*Id.*) Although it is a defendant's burden to show that jurisdiction is unreasonable despite its contacts with a forum state, *Burger King*, 471 U.S. at 477, the Defendants do not identify any authority in support of their position.

Courts frequently consider distance in determining the burden imposed on a defendant as a result of litigation in a foreign district. *Felland*, 682 F.3d at 677 (Defendant, who was resident of Arizona, would not face heavier burden "than that routinely tolerated by courts exercising specific jurisdiction against nonresidents" if required to litigate in Wisconsin); *Dunlap v. Switchboard Apparatus, Inc.*, No. 1:12-cv-0020-TWP-DKL, 2012 WL 1712554, at *5 (S.D. Ind. May 15, 2012) (noting that Defendant was resident of state neighboring Indiana and finding that

assertion of jurisdiction did not violate notions of fair play and substantial justice); *Stevens v. Walgreen Co.*, No. 4:11-cv-116-WGH-RLY, 2012 WL 1365448, at *4 (S.D. Ind. Apr. 19, 2012) (finding that a Defendant that was a resident of Illinois would have a marginally more difficult time bringing witnesses to the courthouse in New Albany, Indiana, instead of in Louisville, Kentucky where the incident giving rise to the lawsuit occurred). Litigating this case in South Bend imposes a minimal burden on the Defendants. Stevensville, Michigan, is approximately 35 miles from the city of South Bend, Indiana. This minimal burden is even less compelling in view of the fact that the nearest federal court in the Western District of Michigan is approximately 58 miles from Stevensville in Kalamazoo.

ii.     Forum State's Interest in Adjudicating the Dispute

Citing *uBid* and *Summit Group Holdings, LLC v. O'Donnell*, No. 1:06-CV-339-RL, 2007 U.S. Dist. LEXIS 38689, *14 (N.D. Ind. May 25, 2007), the Plaintiff argues that "Indiana has a significant interest in providing a forum for its corporate citizens to seek relief when they suffer injury." (Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss 15.) In their Reply, the Defendants challenge this position, stating that Indiana's interest in providing a forum for the Plaintiff is "diminished because 1st Source has chosen to reach out into another jurisdiction, operate branch offices there, and conduct business with a Michigan municipal entity." (Reply in Supp. of Defs.' Mot. to Dismiss 8.) The Defendants again cite no authority in support of their position. Seventh Circuit precedent bolsters the Plaintiff's position. States have a significant interest in providing a forum for their residents to seek legal relief for injuries suffered within their territory. *See Felland*, 682 F.3d at 677 ("[A]s is almost always the case, Wisconsin has a strong interest in

16

providing a forum for its residents to seek redress for torts inflicted by out-of-state actors and injuries suffered within the state."); *Tamburo*, 601 F.3d at 706 ("Illinois has a strong interest in providing a forum for its residents and local businesses to seek redress for tort injuries suffered within the state and inflicted by out-of-state actors."); *Wine & Canvas Dev., LLC v. Weisser*, — F.Supp. 2d —, No. 1:11-cv-01598-TWP-DKL, 2012 WL 3260234, at *7 (S.D. Ind. Aug. 7, 2012) ("Indiana has an interest in adjudicating this dispute because Wine & Canvas is an Indiana LLC."). Therefore, the Court finds that Indiana has an interest in the present dispute as the Plaintiff is a resident of Indiana and suffered its injuries in Indiana. This factor weighs in favor of exercising personal jurisdiction over Defendant Schlipp.

iii.     Plaintiff's Interest in Obtaining Convenient and Effective Relief

In its Response, the Plaintiff emphasizes its interest in litigating in the Northern District of Indiana. According to the Plaintiff, the loan documents between it and the Village obligate the parties to litigate in an Indiana court. (Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss 14.) Therefore, "[s]hould the individual defendants be released from this lawsuit, [the Plaintiff] would be faced with bringing two lawsuits in two different jurisdiction involving the same core of operative facts and legal issues—thus opening the door for contradictory court rulings and inconsistent legal obligations." (*Id.*) In their Reply, the Defendants argue that the Plaintiff's argument is "without weight" because it has chosen to assert different legal claims against the Village and the individual Defendants. (Reply in Supp. of Defs.' Mot. to Dismiss 8.)

Here, the facts demonstrate that the Plaintiff has an interest in obtaining relief in Indiana. The Plaintiff is a resident of Indiana and has alleged an injury in Indiana. *Cf. Wine & Canvas* ,

2012 WL 3260234, at *7 ("Because Wine & Canvas is an Indiana company, it clearly has an interest in obtaining convenient and effective relief, which is best accomplished in Indiana."); *Dunlap*, 2012 WL 1712554, at *5 (stating that a resident of Indiana has interest in obtaining relief in Indiana). Were the Court to dismiss the individual Defendants from this lawsuit, the Plaintiff would have to bring a separate suit against them in Michigan while still litigating its breach of contract claims against the Village in the Northern District of Indiana. In the Court's view, this potential scenario would be neither convenient nor effective in resolving the instant suit; the Plaintiff would be compelled to raise the same facts in different forums, needlessly wasting the Plaintiff's time and resources.

iv.     The Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies

For this factor, the parties' arguments overlap with those raised concerning the Plaintiff's interest in obtaining convenient and effective relief. As previously noted, were the Court to dismiss the individual Defendants from this lawsuit, the Plaintiff would need to bring a separate lawsuit against those Defendants in Michigan while continuing to litigate its contract claims against the Village in the Northern District of Indiana. Although the Plaintiff raises a breach of contract claim against the Village and a claim of misrepresentation against the individual Defendants, the factual basis for those separate claims are essentially identical. Dismissal would require a court in Michigan to consider the same facts concerning the claim of misrepresentation that this Court would be required to consider in resolving the Plaintiff's breach of contract claim against the Village. Such a dismissal would be contrary to the judiciary's interest in efficient resolution of controversies and management of scarce judicial resources. *Cf. Kopfman v. Ensign*

18

*Ribbon Burners, LLC*, 803 F. Supp. 2d 914, 919 (N.D. Ill. 2011) (stating that "judicial economy is served by adjudicating the case where the injury occurred"); *Hartford Cas. Ins. Co. v. Foxfire Printing & Packaging, Inc.*, No. 10 C 50298, 2011 WL 4345850, at *6 (N.D. Ill. Sept. 15, 2011) (finding that judicial resources would be conserved "to the extent of any overlap between the cases").

v.      The Shared Interest of Several States in Furthering Fundamental Substantive Social Policies

Neither party presents argument concerning this reasonableness factor. Having reviewed the pleadings, there is no indication that either party is engaging in forum shopping or other behavior that would undermine substantive social policies. This factor is therefore neutral as to either party's position concerning the exercise of jurisdiction.

d.      *Conclusion*

The Court finds that Defendant Schlipp purposefully directed his activities at the State of Indiana, that the Plaintiff's alleged injury arises out of the defendant's forum-related activities, and that the exercise of specific jurisdiction over Defendant Schlipp comports with traditional notions of fair play and substantial justice. Viewed in isolation, Defendant Schlipp's activities as a Councilmember appear to be weak contacts with the State of Indiana. But when viewed in broader context, this superficial conclusion is dispelled. Over a period of four years, Defendant Schlipp and the other members of the Village Council engaged in a series of actions directed at the Plaintiff in Indiana for the purpose of obtaining commercial loans and extending those loans. Therefore, having actively facilitated loan agreements between the Village and the Plaintiff, it

should be no surprise to the Defendants that they could be called into court in Indiana.

In their pleadings, the Defendants place great weight on their status as elected officials as a basis for granting their Motion to Dismiss. The Council members argue that the Court does not have personal jurisdiction over them because they acted in their official capacities on behalf of the Village in approving and extending the loans. (Br. in Supp. of Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction 5–6.) Consequently, the Council members contend, their votes approving and extending the loans were directed to Michigan and the Village, not to Indiana. (*Id.* 5.) In the Defendants' view, "[t]he allegations by which 1st Source attempts to impose liability on the individual Councilmembers relate to votes on resolutions authorizing ***Village*** actions that 1st Source asserts are misrepresentations. Nowhere does 1st Source allege, nor are there facts to show, that the Councilmembers themselves made any misrepresentations or undertook any obligations ***on behalf of themselves***." (*Id.* 6 (emphasis in the original).) The Defendants have failed to present any legal authority to support this position.

Moreover, to the extent that capacity could be considered relevant to the analysis of personal jurisdiction, Defendants overlook a key fact in this case. At this stage of the proceedings, the Court must accept as true all well-pleaded factual allegations in the Complaint. Here, the Plaintiff alleges that the Councilmembers misrepresented the Village's legal authority to enter into a loan agreement with the Plaintiff. By its very nature, a claim of misrepresentation implicates an individual in his or her personal capacity. No one suggests that the alleged misrepresentations made by the individual Defendants were part of an official Village policy. Therefore, the Court understands the Plaintiff to allege that the Defendants' actions that form the basis for its misrepresentation claim were performed in their personal, rather than official,

capacity. The individual Defendants' status as elected officials may have legal significance in a motion to dismiss for failure to state a claim or at summary judgment, but their status as elected officials does not alter the Court's conclusion concerning personal jurisdiction.

In determining whether the exercise of jurisdiction over the individual Defendants is permissible, the Court has considered the five reasonableness factors in its "fair play and substantial justice" analysis. These factors do not normally justify a determination against personal jurisdiction when a defendant's minimum contacts are adequate. *Hemi Group*, LLC, 622 F.3d at 760. As the Seventh Circuit stated in *Felland*:

> Jurisdictional rules may not be employed in a manner that puts a defendant at a severe disadvantage, but "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." A party's concern that a forum is particularly unfair or inconvenient "usually may be accommodated through means short of finding jurisdiction unconstitutional."

682 F.3d at 676 (quoting *Burger King*, 471 U.S. at 477) (internal citations omitted). Here, the reasonableness factors reinforce the Court's conclusion that personal jurisdiction is appropriate because of the limited burden placed on the Defendant, the State of Indiana's interest in providing a forum for legal relief for one of its residents, the Plaintiff's interest in obtaining convenient and effective relief, and the judicial system's interest in the efficient resolution of this case.

Therefore, the Court concludes that the assertion of personal jurisdiction as to Defendant Schlipp is appropriate and the Court will deny the Defendants' Motion as to Defendant Schlipp.

## 2.     *Steve Hinrichs*

Unlike Defendant Schlipp, Defendant Hinrichs had no contact with the Plaintiff that would support a finding in favor of the exercise of personal jurisdiction over him. Defendant Hinrichs was not involved in the later Councilvotes in which Defendant Schlipp did participate. Defendant Hinrichs' only involvement was that on December 21, 2006, Defendant Hinrichs voted to authorize the Village to obtain commercial loans of up to $1,000,000 to facilitate the development of the downtown district. (December 2006 Resolution.) However, as previously noted, this Resolution authorized the Village to obtain a loan from *any* public or private lending institution on the most competitive terms available. Nothing in the Resolution indicated that the Plaintiff was the lending institution in question. Nor has the Plaintiff presented any evidence that Defendant Hinrichs, or any of the other Councilmembers at the time of the December 2006 Resolution, knew that the Plaintiff was the lending institution that the Village would ultimately contract with in order to obtain the loans at issue in the present case. Defendant Hinrichs' vote therefore cannot be considered to have been "purposefully directed" at the Plaintiff in Indiana. Further, the Plaintiff has not identified any instances in which Defendant Hinrichs had contacts with the Plaintiff or its representatives. No evidence in the record suggests that Defendant Hinrichs had any contact with the Plaintiff in Indiana. Consequently, the Court finds that the exercise of personal jurisdiction over Defendant Hinrichs would be inappropriate and the Court will grant the Defendants' Motion as to Defendant Hinrichs.

## 3.     *Ken Hansen*

Defendant Hansen's contacts with the Plaintiff were similar to those of Defendant

Schlipp's. On December 23, 2008, Defendant Hansen voted to authorize the Village to obtain a ninety-day extension on its loans with the Plaintiff. (December 2008 Resolution.) Several months later, on March 19, 2009, Defendant Hansen voted to authorize the Village to obtain a second ninety-day extension on the loans. (March 2009 Resolution, ECF No. 14-9.) After the departure of the Village Manager in May 2009, on June 18, 2009, Defendant Hansen voted to authorize the Village to obtain an 180-day extension on the loans. (June 2009 Resolution.) Shortly thereafter, Defendant Hansen voted to authorize Defendants Peters, Rush, Kerlikowske, and Gibson to sign credit documents on behalf of the Village and DDA. (July 2009 Resolution.) After Defendants Peters, Rush, Kerlikowske, and Gibson signed loan documents reaffirming the Village's obligations with respect to the loans, on January 21, 2010, Defendant Hansen voted to authorize a ninety-day extension of the loans from the Plaintiff. (January 2010 Resolution.) The Plaintiff subsequently filed the instant action on May 13, 2011. On May 25, 2011, Defendant Hansen voted to approve an affirmative defense in the instant lawsuit, based on an asserted lack of legal authority to enter into a loan agreement with the Plaintiff. (Minutes of May 25, 2011, Special Council Meeting.)

For the same reasons as Defendant Schlipp, the exercise of personal jurisdiction over Defendant Hansen is appropriate. Defendant Hansen repeatedly directed his actions as a Council member at the Plaintiff in Indiana over the course of four years to facilitate loans between the Village and the Plaintiff. As a result of Defendant Hansen's actions, the Plaintiff's alleged injuries occurred in the state of Indiana. Further, the exercise of personal jurisdiction over Defendant Hansen comports with traditional notions of fair play and substantial justice. Consequently, the Court will deny the Defendants' Motion as to Defendant Hansen.

**4.**     *Steve Slavicek*

Defendant Slavicek's contacts with the Plaintiff were similar to those of Defendants Schlipp and Hansen. Following the execution of the initial loan in January 2007, on December 23, 2008, Defendant Slavicek voted to authorize the Village to obtain a ninety-day extension on the loans. (December 2008 Resolution.) On March 19, 2009, Defendant Slavicek voted to authorize the Village to obtain another ninety-day extension on the loans from the Plaintiff. (March 2009 Resolution.) After the departure of the Village Manager in May 2009, on June 18, 2009, Defendant Slavicek voted to authorize the Village to obtain an 180-day extension on the loans. (June 2009 Resolution.) Shortly thereafter, Defendant Slavicek voted to authorize Defendants Peters, Rush, Kerlikowske, and Gibson to sign credit documents on behalf of the Village and DDA. (July 2009 Resolution.) Subsequently, Defendant Slavicek voted to authorize the Village to obtain two additional extensions on the loans from the Plaintiff in January and March 2010. (January 2010 Resolution; March 2010 Resolution, ECF No. 14-11.) On May 25, 2011, Defendant Slavicek voted to approve an affirmative defense in the instant lawsuit, based on an asserted lack of legal authority to enter into a loan agreement with the Plaintiff. (Minutes of May 25, 2011, Special Council Meeting.)

For the same reasons as Defendants Schlipp and Hansen, the exercise of personal jurisdiction over Defendant Slavicek is appropriate. Consequently, the Court will deny the Defendants' Motion as to Defendant Slavicek.

**5.**     *Pat Arter*

Defendant Arter's contacts with the Plaintiff extended beyond those of Defendants

Schlipp, Hansen, and Slavicek. On December 21, 2006, Defendant Arter voted to authorize the Village and DDA to obtain a loan to improve and rehabilitate the Village and its downtown district. (December 2006 Resolution.) Two years later, on December 23, 2008, Defendant Arter voted to authorize the Village to obtain a ninety-day extension on its loans with the Plaintiff. (December 2008 Resolution.) In March 2009, the Council voted to authorize the Village to obtain another ninety-day extension of its loans; Defendant Arter voted in favor of the Resolution. (March 2009 Resolution.) Following the Departure of the Village Manager, Defendant Arter considered the June 2009 Resolution and voted to authorize the Village to obtain an 180-day extension on the loans from the Plaintiff. (June 2009 Resolution.) After the Village obtained this extension, Defendant Arter voted to authorize Defendants Peters, Rush, Kerlikowske, and Gibson to sign credit documents on behalf of the Village and DDA. (July 2009 Resolution.) Subsequently, Defendant Arter voted to authorize the Village to obtain two additional extensions on the loans from the Plaintiff in January and March 2010. (January 2010 Resolution; March 2010 Resolution.) On May 25, 2011, Defendant Arter voted to approve an affirmative defense in the instant lawsuit, based on an asserted lack of legal authority to enter into a loan agreement with the Plaintiff. (Minutes of May 25, 2011, Special Council Meeting.)

For the same reasons as Defendants Schlipp, Hansen, and Slavicek, the exercise of personal jurisdiction over Defendant Arter is appropriate. Further supporting the Court's conclusion that personal jurisdiction is appropriate, Defendant Arter's contacts with the Plaintiff extended beyond those of Defendants Schlipp, Hansen, and Slavicek. Defendant Arter met with representatives of the Plaintiff in Michigan to discuss loan extensions and as part of settlement negotiations. (Arter Aff. ¶ 3, ECF No. 41-1 at 10–11.) These contacts were not random or

fortuitous. Rather they concerned the loans made to the Village by the Plaintiff, the subject

matter of the instant litigation. Although the Defendants emphasize that Defendant Arter's

meetings with the Plaintiff's representatives occurred in Michigan, "[j]urisdiction cannot be

avoided simply because a defendant did not physically enter the forum state." *Felland*, 682 F.3d

at 673 (citing *Burger King*, 471 U.S. at 476). Consequently, the Court will deny the Defendants'

Motion as to Defendant Arter.


**6.**     ***Don Meyer***

Like Defendant Arter, Defendant Meyer's contacts with the Plaintiff extended beyond

those of Defendants Schlipp, Hansen, and Slavicek. On December 21, 2006, Defendant Meyer

voted to authorize the Village and DDA to obtain a loan to improve and rehabilitate the Village

and its downtown district. (December 2006 Resolution.) Following the execution of the initial

loan in January 2007, on December 23, 2008, Defendant Meyer voted to authorize the Village to

obtain a ninety-day extension on the loans. (December 2008 Resolution.) On March 19, 2009,

Defendant Meyer voted to authorize the Village to obtain another ninety-day extension on the

loans from the Plaintiff. (March 2009 Resolution.) After the Village obtained extension of the

loans in June 2009, Defendant Meyer voted to authorize Defendants Peters, Rush, Kerlikowske,

and Gibson to sign credit documents on behalf of the Village and DDA. (July 2009 Resolution.)[5]

As with Defendant Arter, the exercise of personal jurisdiction over Defendant Meyer is

appropriate. Defendant Meyer's contacts with the Plaintiff included contacts similar to

_____

[5] Unlike most of the other individual Defendants, Defendant Meyer did not vote in favor of two
additional extensions on the loans from the Plaintiff in January and March 2010. (*See* January 2010
Resolution; March 2010 Resolution.) Further, Defendant Meyer did not vote in favor of the Defendants'
affirmative defense in the instant lawsuit. (*See* Minutes of May 25, 2011, Special Council Meeting.)

Defendants Schlipp, Hansen, and Slavicek. Moreover, like Defendant Arter, his contacts extended beyond the those of Defendants Schlipp, Hansen, and Slavicek. On two occasions, Defendant Meyer met with representatives of the Plaintiff in Michigan as part of settlement negotiations in an effort to resolve the loan dispute. (Meyer Aff. ¶ 8, ECF No. 41-1 at 8–9.) These additional contacts with the Plaintiff bolster the Court's analysis. Consequently, the Court will deny the Defendants' Motion as to Defendant Meyer.

7.    *Kim Peters*

Like Defendants Arter and Meyer, Defendant Peters's contacts with the Plaintiff extended beyond those of Defendants Schlipp, Hansen, and Slavicek. On December 21, 2006, Defendant Peters voted to authorize the Village and DDA to obtain a loan to improve and rehabilitate the Village and its downtown district. (December 2006 Resolution.) Two years later, on December 23, 2008, Defendant Peters voted to authorize the Village to obtain a ninety-day extension on the loans. (December 2008 Resolution.) On March 19, 2009, Defendant Peters voted to authorize the Village to obtain another ninety-day extension on the loans from the Plaintiff. (March 2009 Resolution.) Following the Departure of the Village Manager, Defendant Peters considered the June 2009 Resolution and voted to authorize the Village to obtain an 180-day extension on the loans from the Plaintiff. (June 2009 Resolution.) Due to the departure of the Village Manager, the Council members, including Defendant Peters, voted to authorize Defendants Peters, Rush, Kerlikowske, and Gibson to sign credit documents on behalf of the Village and DDA. (July 2009 Resolution.) Defendant Peters was authorized to act as a "Trustee" on behalf of the Village. (*Id.*)

With this authorization, Defendant Peters signed an "Amendment Agreement" on behalf

of the Village on July 5, 2009. (July 5, 2009, Amendment Agreement, ECF No. 14-10.) The

Amendment Agreement "confirmed" the loan agreement between the parties and stated that "all

terms and conditions therein shall remain in full force and effect." (*Id.*) Subsequently, on January

5, 2010, the Plaintiff's Vice President, Erik Back, traveled to Michigan to meet with Defendants

Peters, Rush, Gibson, and Kerlikowske. (Back Aff. ¶ 30.) On January 5, 2010, Defendant Peters

signed an "Amended and Restated Promissory Note - Term" on behalf of the Village, ratifying

and reaffirming the terms and conditions of the loans and extending the payment due dates.

(Amended and Restated Promissory Note, ECF No. 14-12 at 1.) Shortly thereafter, Defendant

Peters also voted to authorize the Village to obtain two additional extensions on the loans from

the Plaintiff in January and March 2010. (January 2010 Resolution; March 2010 Resolution.)

Following receipt of the March 2010 Resolution approving an extension of the loans, Back again

traveled to Michigan to meet with Defendants Peters, Rush, Gibson, and Kerlikowske. (Back

Aff. ¶ 35.) On behalf of the Village, Defendant Peters signed an "Amendment Agreement" on

March 31, 2010, which stated that the loan agreement between the Village and the Plaintiff "and

all other documents and agreements executed in connection therewith are hereby confirmed in

all respects, and all terms and conditions therein shall remain in full force and effect." (March

31, 2010, Amendment Agreement, ECF No. 14-12 at 3–4.)[6] On May 25, 2011, Defendant Peters

voted to approve an affirmative defense in the instant lawsuit, based on an asserted lack of legal

---

[6] Defendant Peters' Affidavit confirms that she signed loan extensions on behalf of the Village. (Peters Aff. ¶¶ 5–6, ECF No. 41-1 at 4–5.) In her Affidavit, Defendant Peters emphasizes that she signed the loan agreements as a member of the Village's Finance Committee and did so at the behest of Back, the Plaintiff's Vice-President. (*Id.*) As previously noted, the Defendants have failed to present authority for their position that because the Defendants acted in their official capacity, the Court's exercise of personal jurisdiction over them is inappropriate.

authority to enter into a loan agreement with the Plaintiff. (Minutes of May 25, 2011, Special Council Meeting.)

Defendant Peters's contacts with the Plaintiff included: a series of votes authorizing the Village to obtain extension on the loans; a vote authorizing members of the Village Finance Committee to sign loan agreements on behalf of the Village; multiple meetings with Back, the Plaintiff's Vice-President, concerning the loans in question; and the signing of multiple loan agreements on behalf of the Village. The Court notes that Defendant Peters's contacts with the Plaintiff were similar to those of Defendants Schlipp, Hansen, and Slavicek. The exercise of jurisdiction over Defendant Peters would therefore be appropriate for the same reasons as discussed with respect to those Defendants. However, Defendant Peters's interactions with the Plaintiff included significant additional contacts that further affirm the Court's exercise of personal jurisdiction over her. These additional contacts, particularly the signing of multiple loan agreements with the Plaintiff, should have put Defendant Peters on notice that she could be called into Court in Indiana if the Plaintiff suffered injury related to the agreement between the parties. By her own account, Defendant Peters signed the loan agreements because the Plaintiff stated that it would "call the loan due" and demand payment if she and Defendants Rush, Kerlikowske, and Gibson did not sign. (Peters Aff. ¶ 6.) Therefore, Defendant Peters understood at the time that she was signing the loan agreements that the Plaintiff, in its decision to continue to extend the loans to the Village, was relying upon her representations that the Village was still bound by the terms of the agreement and that the Village would repay the loans. As previously noted, the fact that Defendant Peters signed these documents in Michigan, rather than Indiana, does not prohibit the exercise of personal jurisdiction over her. *See Felland*, 682 F.3d at 673. The

Court's exercise of personal jurisdiction over Defendant Peters is appropriate because she purposefully directed her actions at the Plaintiff in Indiana. Consequently, the Court will deny the Defendants' Motion as to Defendant Peters.

8.    *Lori Gibson*

Of the individual Defendants addressed in this Order, Defendant Gibson, the President of the Village Council, had the most extensive contacts with the Plaintiff. On December 21, 2006, Defendant Gibson voted to authorize the Village and DDA to obtain a loan to improve and rehabilitate the Village and its downtown district. (December 2006 Resolution.) Following the execution of the initial loan in January 2007, on December 23, 2008, Defendant Gibson voted to authorize the Village to obtain a ninety-day extension on the loans. (December 2008 Resolution.) On March 19, 2009, Defendant Gibson voted to authorize the Village to obtain another ninety-day extension on the loans from the Plaintiff. (March 2009 Resolution.)

In May 2009, Gardner left his position as Village Manager. According to Back, after Gardner's departure, Defendant Gibson became the Plaintiff's primary contact with the Village and she "appeared to be functioning in a CEO-type role." (Back Aff. ¶ 17.) Back and Defendant Gibson had numerous in-person meetings in Michigan to discuss the loans from the Plaintiff and the Village's financial condition. (*Id.*) During this time, Defendant Gibson was aware that Back was employed by an Indiana bank and the Village's loans were from the Indiana bank that he represented. (*Id.* ¶ 19.) Back provided Gibson with his business card, which showed that his office was located in Indiana and that his phone and fax numbers were Indiana numbers. (*Id.*) Shortly after Gardner's departure, Back "asked Gibson point-blank if the Village intended to

repay the loans." (*Id.* ¶ 20.) Defendant Gibson responded that the Village intended to repay the loans. (*Id.*)

On June 18, 2009, Defendant Gibson voted to authorize the Village to obtain a 180-day extension on the loans from the Plaintiff. (June 2009 Resolution.) Due to the departure of Gardner, the Village Manager, the Council members, including Defendant Gibson, voted to authorize Defendants Peters, Rush, Kerlikowske, and Gibson to sign credit documents on behalf of the Village and DDA. (July 2009 Resolution.) After receiving the July 2009 Resolution, Back traveled to the Village's office to meet with Defendant Gibson and witnessed her sign two amended agreements granting the loan extension. (Back Aff. ¶ 26; *see also* July 5, 2009, Amendment Agreement.) The Amendment Agreement "confirmed" the loan agreement between the parties and stated that "all terms and conditions therein shall remain in full force and effect." (*Id.*)

Subsequent to the July 2009 extension on the loans, Back and Defendant Gibson exchanged a number of e-mails.[7] (Back Aff. ¶ 22.) Attached to Back's Affidavit is an e-mail exchange between Defendant Gibson and Back from late October 2009 to early December 2009. (Back-Gibson E-mail Exchange, ECF No. 45-1 at 10–12.) In the exchange, Back and Defendant Gibson discussed how to manage the maturing loans held by the Village. (*Id.*) Further, on December 29, 2009, Defendant Gibson faxed documents to the Plaintiff's offices in Indiana, including the Village's financial statements and documentation from the Michigan Department of Treasury. (Back Aff. ¶ 23.) Back states, "I know it was faxed by Gibson because the fax

[7] Defendant Gibson's assertion that she had no communications with the Plaintiff by e-mail (Gibson Aff. ¶ 14, ECF No. 41-1 at 16–18) is undermined by the Plaintiff's submission of e-mails exchanged between Back and Gibson from late October 2009 to early December 2009. (Back-Gibson E-mail Exchange, ECF No. 45-1 at 10–12.)

header states that it was faxed from 'Lakeshore Middle School,' the school where Gibson works as a secretary to the principal." (*Id.*)

A week after receiving the Draft Financial Statement, Back traveled to the Village to meet with Defendants Gibson, Peters, Rush, and Kerlikowske. (*Id.* ¶ 30.) Defendant Gibson signed an "Amended and Restated Promissory Note - Term" on behalf of the Village, ratifying and reaffirming the terms and conditions of the loans and extending the payment due dates. (Amended and Restated Promissory Note.) Shortly thereafter, Defendant Gibson voted to authorize the Village to obtain two additional extensions on the loans from the Plaintiff in January and March 2010. (January 2010 Resolution; March 2010 Resolution.)

Following receipt of the March 2010 Resolution approving an extension of the loans, Back again traveled to Michigan to meet with Defendants Gibson, Peters, Rush, and Kerlikowske. (Back Aff. ¶ 35.) On behalf of the Village, Defendant Gibson signed an "Amendment Agreement" on March 31, 2010, which stated that the loan agreement between the Village and the Plaintiff "and all other documents and agreements executed in connection therewith are hereby confirmed in all respects, and all terms and conditions therein shall remain in full force and effect." (March 31, 2010, Amendment Agreement.) On May 25, 2011, Defendant Gibson voted to approve an affirmative defense in the instant lawsuit, based on an asserted lack of legal authority to enter into a loan agreement with the Plaintiff. (Minutes of May 25, 2011, Special Council Meeting.)

Throughout this period of time, Back asserts that he frequently spoke on the phone with Defendant Gibson from his office in Indiana. (Back Aff. ¶ 21.) According to Back, he and Defendant Gibson "talked at least twice a month from the time Gardner left in May 2009 until

the time the Village defaulted in September 2010. While many of the phone calls between us were initiated by me, some were initiated by her." (*Id.*) To support his assertion that Defendant Gibson called him at his office in Indiana, Back points to Defendant Gibson's October 22, 2009, e-mail in which she wrote, "Thanks for your phone number . . . I will call you." (Back-Gibson E-mail Exchange, ECF No. 45-1 at 12.)

Here, too, Defendant Gibson's contacts with the Plaintiff included a series of votes authorizing the Village to obtain extensions of the loans and authorizing designated Village officers to sign loan agreements on behalf of the Village. The Court has previously found the exercise of personal jurisdiction over Defendants Schlipp, Hansen, and Slavicek appropriate based on these actions. Defendant Gibson's contacts with the Plaintiff extended beyond voting on matters related to the loans as a Council member. Like Defendant Peters, Defendant Gibson participated in multiple meetings with the Plaintiff's Vice-President, Back, concerning the loan in question and signed multiple loan agreements on behalf of the Village. For the same reasons as articulated in the discuss of Defendant Peters, these contacts further support the Court's exercise of personal jurisdiction over Defendant Gibson.

Further, Defendant Gibson's contacts with the Plaintiff included phone conversations and e-mail exchanges concerning the Village's obligation to repay those loans, the issue at the center of the instant litigation. The Defendants acknowledge Defendant Gibson's contacts with the Plaintiff but insist that all of the contacts were initiated by the Plaintiff, specifically Back. (Br. in Supp. of Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction 8–9.) Quoting *Purdue Research Foundation*, 338 F.3d at 780, the Defendants emphasize that "it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or

some other entity." In its Response, the Plaintiff counters that "[w]hile many of the contacts were initiated by 1st Source, some were initiated by Gibson." (Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss 13.) Therefore, the Plaintiff argues that Defendant's Gibsons contacts should not be considered random or fortuitous. (*Id.*) In their Reply, the Defendants reiterate that the Plaintiff was the party that initiated the contacts in question. (Reply in Supp. of Defs.' Mot. to Dismiss 5–6.) To the extent that Back alleges that Gibson initiated some of the phone calls concerning the loans, the Defendants maintain that those phone calls are insufficient to satisfy the minimum contacts standard. (*Id.* 6.)

The Court notes that even absent the phone calls and e-mails in question, the exercise of personal jurisdiction over Defendant Gibson would be appropriate. Nonetheless, the Court will explain why the phone calls and e-mails add further support to this conclusion. First, the parties have presented conflicting evidence on the issue of whether Defendant Gibson initiated phone calls to Back. At this stage of the proceedings, the Court "take[s] as true all well-pleaded facts alleged in the complaint and resolve[s] any factual disputes in the affidavits in favor of the plaintiff." *Tamburo*, 601 F.3d at 700 (citing *Purdue*, 338 F.3d at 782). Back's Affidavit indicates that he spoke with Defendant Gibson on at least thirty separate occasions and, on some of those occasions, Defendant Gibson initiated the phone call. (Back Aff. ¶ 21.) In support of this assertion, the Plaintiff submits an e-mail in which Defendant Gibson states her intention to call Back at his office. (Back-Gibson E-mail Exchange, ECF No. 45-1 at 12.) Defendant Gibson attests that she has no recollection of calling Back at his office in Indiana. (Gibson Aff. ¶ 13.) The Court resolves this factual conflict in favor of the Plaintiff at this stage of the proceedings.

Second, the Court finds that the Defendants place too much weight on the issue of who

initiated the activity as opposed to the proper question of whether the activity was unilateral. Defendant Gibson seeks to avoid the import of her actions in directing phone calls and e-mails to the Plaintiff in Indiana. The factual pleadings do not evidence unilateral activity on the part of the Plaintiff or its representative, Back; the Plaintiff did not make unanswered phone calls to Defendant Gibson or flood her inbox with unopened e-mails and then attempt to persuade the Court to exercise jurisdiction over her on the basis of those unilateral actions. Rather, the Plaintiff, through Back, engaged in a number of telephone conversations and e-mail exchanges with Defendant Gibson, some of which were initiated by Defendant Gibson. Defendant Gibson's contacts with Back were part of a reciprocal relationship in which the parties communicated in an effort to resolve outstanding issues related to the loans from the Plaintiff. Therefore, the Court has considered these contacts in its minimum contacts analysis.

The Court finds that exercise of personal jurisdiction over Defendant Gibson is appropriate based on the foregoing analysis. Consequently, the Court will deny the Defendants' Motion as to Defendant Gibson.

**9.** *Shirley Kerlikowske*

Defendant Kerlikowske served as a member of the Stevensville Downtown District Authority (DDA) from approximately 2000 to 2010. (Kerlikowske Aff. ¶ 2, ECF No. 41-1 at 19–20.) Unlike the other individual Defendants previously addressed in this Opinion and Order, Defendant Kerlikowske was not a member of the Village Council during the relevant time period. Therefore, she did not vote to authorize the Village to obtain extensions on the loans or vote to authorize Defendants Peters, Rush, Gibson, or herself to sign loan documents on the

Village's behalf.

Defendant Kerlikowske's contacts with the Plaintiff appear to have begun following Gardner's departure from his position as Village Manager. Due to the departure of Gardner, the Council members voted to authorize Defendants Peters, Rush, Kerlikowske, and Gibson to sign credit documents on behalf of the Village and DDA. (July 2009 Resolution.) After receiving the July 2009 Resolution, Back traveled to the Village's office to meet with Defendants Kerlikowske, Peters, Rush, and Gibson and witnessed Defendant Kerlikowske sign two amended agreements granting the loan extension. (Back Aff. ¶ 26; *see also* July 5, 2009, Amendment Agreement.) The Amendment Agreement "confirmed" the loan agreement between the parties and stated that "all terms and conditions therein shall remain in full force and effect." (*Id.*)

Following the Plaintiff's receipt of the Village's financial statements and documentation from the Michigan Department of Treasury, Back traveled to the Village to meet with Defendants Kerlikowske, Peters, Rush, and Gibson. (Back Aff. ¶ 30.) On January 5, 2010, Back witnessed Defendant Kerlikowske execute loan documents on behalf of the Village, ratifying and reaffirming the terms and conditions of the loans and extending the payment due dates. (Amended and Restated Promissory Note.) In March 2010, the Village sought to obtain further extensions on its loans. (March 2010 Resolution.) Following receipt of the March 2010 Resolution approving an extension of the loans, Back again traveled to Michigan to meet with Defendants Kerlikowske, Peters, Rush, and Gibson (Back Aff. ¶ 35.) On behalf of the Village, Defendant Kerlikowske signed an "Amendment Agreement," which stated that the loan agreement between the Village and the Plaintiff "and all other documents and agreements executed in connection therewith are hereby confirmed in all respects, and all terms and

conditions therein shall remain in full force and effect." (March 31, 2010, Amendment Agreement.)

During the relevant time period, Back states that he had many in-person meetings with Defendant Gibson and that Defendant Kerlikowske attended "most" of those meetings. (Back Aff. ¶¶ 17–18.) Further, Back emphasizes that throughout these meetings "it was no secret" that he was employed by an Indiana bank and that the Village's loans were from an Indiana bank. (*Id.* ¶ 19.) According to Defendant Kerlikowske, the only contact she had with the Plaintiff was a single meeting with Back shortly after Gardner left the Village in May 2009. (Kerlikowske Aff. ¶ 7.) At this stage of the proceedings, the Court resolves factual disputes in favor of the Plaintiff, *Tamburo*, 601 F.3d at 700, and consequently, credits Back's account of his meetings with Defendant Kerlikowske as set forth in his affidavit.

Like Defendants Peters and Gibson, the Court finds that Defendant Kerlikowske's in-person meetings with the Plaintiff's representative, Back, and the signing of loan documents on behalf of the Village are sufficient contacts to support the exercise of personal jurisdiction. Defendant Kerlikowske met with Back, a representative of an Indiana bank, to discuss issues related to loans from that Indiana bank. By mid-2009, all parties involved knew that Back represented an Indiana bank and knew that the loans in question were from an Indiana bank. Most significantly, Defendant Kerlikowske signed loan documents on behalf of the Village, reaffirming the Village's commitment to pay back the loans from the Plaintiff. Defendant Kerlikowske signed those agreements knowing that the Plaintiff would rely on her representations and extend the payment dates for the loans. These contacts with the Plaintiff should have put Defendant Kerlikowske on notice that she could be called into Court in Indiana

if the Plaintiff suffered injury as a result of the agreement between the parties. Although Defendant Kerlikowske's contacts with the Plaintiff occurred in Michigan, they were directed at the Plaintiff in Indiana to facilitate extensions on the loans.

The Court finds that exercise of personal jurisdiction over Defendant Kerlikowske is appropriate based on the foregoing analysis. Consequently, the Court will deny the Defendants' Motion as to Defendant Kerlikowske.

**10.** *Dawn Rush*

Defendant Rush has served as the Treasurer of the Village since June 6, 2009. (Rush Aff. ¶ 1, ECF No. 53-1.) Like Defendant Kerlikowske, Defendant Rush was not a member of the Village Council during the relevant time period and did not vote to authorize the Village to obtain extensions on the loans or vote to authorize Defendants Peters, Kerlikowske, Gibson, or herself to sign loan documents on the Village's behalf. Due to the departure of Gardner, the Council members voted to authorize Defendants Rush, Peters, Kerlikowske, and Gibson to sign credit documents on behalf of the Village and DDA. (July 2009 Resolution.) After receiving the July 2009 Resolution, Back traveled to the Village's office to meet with Defendants Rush, Peters, Kerlikowske, and Gibson and witnessed Defendant Rush sign two amended agreements granting the loan extension. (Back Aff. ¶ 26; *see also* July 5, 2009, Amendment Agreement.) The Amendment Agreement "confirmed" the loan agreement between the parties and stated that "all terms and conditions therein shall remain in full force and effect." (*Id.*)

Following the Plaintiff's receipt of the Village's financial statements and documentation from the Michigan Department of Treasury in December 2009, Back traveled to the Village to

meet with Defendants Rush, Peters, Kerlikowske, and Gibson. (Back Aff. ¶ 30.) On January 5,

2010, Back witnessed Defendant Rush execute loan documents on behalf of the Village,

ratifying and reaffirming the terms and conditions of the loans and extending the payment due

dates. ( Amended and Restated Promissory Note.) In March 2010, the Village sought to obtain

further extensions on its loans. (March 2010 Resolution.) Following receipt of the March 2010

Resolution approving an extension of the loans, Back again traveled to Michigan to meet with

Defendants Rush, Peters, Kerlikowske, and Gibson (Back Aff. ¶ 35.) On behalf of the Village,

Defendant Rush signed an "Amendment Agreement," which stated that the loan agreement

between the Village and the Plaintiff "and all other documents and agreements executed in

connection therewith are hereby confirmed in all respects, and all terms and conditions therein

shall remain in full force and effect." (March 31, 2010, Amendment Agreement.)

For the same reasons as Defendant Kerlikowske, the Court finds that exercise of personal

jurisdiction over Defendant Rush is appropriate. Consequently, the Court will deny the

Defendants' Motion as to Defendant Rush.


**CONCLUSION**

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART

Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 40]; and DENIES

Defendant Rush's Joinder to Co-Defendants' Motion to Dismiss for Lack of Personal

Jurisdiction [ECF No. 53]. Consequently, Defendant Hinrichs will be dismissed as a defendant

from this lawsuit. The Plaintiff may proceed with its cause of action against the remaining

Defendants.

SO ORDERED on October 25, 2012.

 s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT  
FORT WAYNE DIVISION