UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| 1ST SOURCE BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 3:11-CV-205-TLS |
| ) | |
| VILLAGE OF STEVENSVILLE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Todd Gardner's Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 65] and Brief in Support [ECF No. 66] filed on March 9, 2012. The Plaintiff, 1st Source Bank, filed a Response in Opposition to the Defendant's Motion [ECF No. 68] on March 26, 2012. On October 25, 2012, the Court issued an Opinion and Order [ECF No. 84] dismissing Defendant Steve Hinrichs from the instant suit and allowing the Plaintiff to proceed with its cause of action against Defendants Steve Hinrichs, Kim Peters, Donald Schlipp, Don Meyer, Pat Arter, Ken Hansen, Steve Slavicek, Lori Gibson, Shirley Kerlikowske, and Dawn Rush. The issues addressed in the Court's October 25 Opinion and Order overlap with the issues that the Court must now address with respect to Defendant Gardner. The Court will therefore borrow liberally from its October 25 Opinion and Order. For the reasons that follow, the Court will deny Defendant Gardner's Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 65].

**BACKGROUND**

This diversity action arises out of a series of loans made by the Plaintiff to the Village of Stevensville, Michigan (the Village) and the Village of Stevensville Downtown Development

Authority (DDA) (collectively Stevensville). In 2010, the Village and the DDA defaulted on those loans. The Plaintiff, a bank organized and existing under the laws of Indiana and located in Indiana, then brought the present suit to enforce its rights under the loan agreements.

Defendant Gardner is the former Village Manager of the Village. In its Amended Complaint [ECF No. 14], the Plaintiff raises claims of intentional or negligent misrepresentation against Defendant Gardner in his individual capacity. Defendant Gardner now moves for dismissal of the Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that this Court lacks personal jurisdiction over him.

**LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) seeks dismissal of a claim where personal jurisdiction is lacking. Once the defendant moves to dismiss under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The difficulty of meeting this burden depends on the method by which a court resolves the issue of personal jurisdiction. *Id.* "When the . . . court holds an evidentiary hearing to determine [personal] jurisdiction, the plaintiff must establish [personal] jurisdiction by a preponderance of the evidence." *Id.* But where, as here, the court determines personal jurisdiction based only on reference to submissions of written materials, the plaintiff simply needs to make a prima facie case of personal jurisdiction. *GCIU–Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). In determining whether the plaintiff has met the prima facie standard, a plaintiff is entitled to a favorable resolution of all disputed relevant facts. *uBID, Inc. v. GoDaddy Grp.,*

*Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010). However, if a defendant submits evidence in opposition to a finding of personal jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found.*, 338 F.3d at 782–83. This evidence submitted by a defendant may include affidavits, which shift the burden back to the plaintiff to produce evidence supporting jurisdiction unless the affidavits merely contain conclusory assertions that the court lacks personal jurisdiction over the defendant. *Id.* at 783 n.13 (citing *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

## ANALYSIS

**A.     Applicable Law**

"A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue Research Found.*, 338 F.3d at 779. A district court must undertake and satisfy a two-step analysis in order to determine whether a state court would have personal jurisdiction over a non-resident defendant. First, the exercise of personal jurisdiction must comport with the state's long-arm statute; second, the exercise must comport with the Due Process Clause of the Fourteenth Amendment. *Id.* Because Indiana's long-arm statute, Indiana Trial Rule 4.4(a), "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the [f]ederal Due Process Clause," *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006), the Court only needs to consider the second step of the analysis.

Due process requires that a defendant have "'certain minimum contacts' with the forum

[state] such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). These minimum contacts "must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Such purposeful availment is required to ensure that defendants may reasonably anticipate what conduct will subject them to the jurisdiction of a foreign sovereign. *Burger King*, 471 U.S. at 472.

Personal jurisdiction may be either specific or general, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011), but only specific jurisdiction needs to be considered here.[1] "Specific jurisdiction is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself." *Abelesz*, 692 F.3d at 654 (citing *Goodyear*, 131 S. Ct. at 2851). The Seventh Circuit instructs that specific jurisdiction is appropriate where: (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state; (2) the alleged injury arises out of the defendant's forum-related activities; and (3) the exercise of specific jurisdiction comports with traditional notions of fair play and substantial justice. *See Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

1.   *Purposeful Direction/Purposeful Availment*

---

[1] Neither party contends that Defendant Gardner is subject to general jurisdiction.

An analysis of the purposeful direction or purposeful availment factor is dependent on the type of claim at issue. *Id.* at 674. In the present case, the Plaintiff alleges that Defendant Gardner engaged in intentional or negligent misrepresentation because of his representations to the Plaintiff that the Village Council was authorized to approve the loan from the Plaintiff to the Village. "Where a plaintiff's claim is for an intentional tort, 'the inquiry focuses on whether the conduct underlying the claim[ ] was purposely directed at the forum state.'" *Id.* (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010)). The Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), provides a framework for a purposeful direction analysis in cases involving intentional torts. The Seventh Circuit in *Felland* and *Tamburo* has identified three factors necessary to establish that tortious conduct was "purposefully directed" at the forum state: "'(1) intentional conduct (or intentional and allegedly tortious conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state.'" *Felland*, 682 F.3d at 674–75 (quoting *Tamburo*, 601 F.3d at 703) (internal quotation marks omitted). There is significant overlap in the analysis of the second and third requirements. *Tamburo*, 601 F.3d at 704.

2.   *Injury Arises Out of the Defendant's Forum-related Activities*

If a defendant's conduct is purposefully directed to a forum state, the plaintiff must also demonstrate that its injury "arises out of" or "relates to" the actions of the defendant. *Felland*, 682 F.3d at 676 (quoting *Tamburo*, 601 F.3d at 708). As the *Felland* court noted, "the Supreme Court has not elaborated on the details of this requirement." 682 F.3d at 676. Circuit courts have

5

split on how close the causal connection between a defendant's actions and a plaintiff's injury must be. *Id.* The Seventh Circuit has expressed that a "but for" causal relationship is insufficient to satisfy this requirement, but has not definitively resolved the issue. *Id.* at 676–77.

3.   *Traditional Notions of Fair Play and Substantial Justice*

Finally, courts are required to consider whether the exercise of personal jurisdiction over a non-resident defendant would offend traditional notions of fair play and substantial justice. *Id.* at 677 (citing *Int'l Shoe*, 326 U.S. at 316). This inquiry requires courts to consider a variety of factors, including: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Felland*, 682 F.3d at 677 (citing *Burger King*, 471 U.S. at 477) (internal quotation marks omitted). In this analysis, a court is instructed to apply a sliding-scale test: "the weaker the defendant's contacts with the forum state are, the less likely it is that exercising jurisdiction over that defendant is appropriate." *Ill. v. Hemi Group LLC*, 622 F.3d 754, 759–60 (7th Cir. 2010) (citing *Purdue Research Found.*, 338 F.3d at 781). These factors "'rarely will justify a determination against personal jurisdiction' because there are other mechanisms available to the court-such as choice of law and transfer of venue-to accommodate the various interests at play." *Hemi Group LLC*, 622 F.3d at 760 (quoting *Purdue Research Found.*, 338 F.3d at 781 n.10).

B.   **Application of Applicable Law**

Defendant Gardner insists that this Court is without a basis to assert personal jurisdiction over him because he lacks sufficient minimal contacts with the state of Indiana. (Def.'s Br. in Supp. of Mot. to Dismiss for Lack of Jurisdiction 10–12, ECF No. 66.) In support of this argument, Defendant Gardner submitted a personal affidavit attesting to de minimis contacts with the state of Indiana, particularly in relation to the loans from the Plaintiff. (Gardner Aff., ECF No. 66-1.) According to the Defendant Gardner, most of his contacts with the Plaintiff took place in Michigan and were initiated by the Plaintiff. (Def.'s Br. in Supp. 7–8.) The Plaintiff challenges Defendant Gardner's assertion that he had limited contact with the Plaintiff and that he believed he was dealing with a Michigan corporate entity. (Pl.'s Resp. in Opp'n 2–10, ECF No. 68.) To support its contention, the Plaintiff identifies numerous instances of contact between Defendant Gardner and the Plaintiff, an Indiana bank. (*Id.*) According to the Plaintiff, "[f]rom Fall 2006 until Gardner left the Village in May 2009, Gardner was 1st Source's sole contact with the Village. During that time period, Back, the 1st Source officer responsible for the bank's commercial relationship with the Village, exchanged numerous phone calls, faxes, and emails with Gardner from Back's office in Indiana." (*Id.* 5 (footnote omitted).) In the Plaintiff's view, Defendant Gardner purposefully directed his actions as Village Manager towards the Plaintiff in Indiana and, therefore, this Court may exercise personal jurisdiction over him.

1.  *Purposefully Directed*

As articulated above, in order to establish that a defendant's tortious conduct was "purposefully directed" at the forum state, a plaintiff must allege facts demonstrating: "(1) intentional conduct (or intentional and allegedly tortious conduct)" on the part of the defendant;

"(2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Felland*, 682 F.3d at 674–75 (quoting *Tamburo*, 601 F.3d at 703) (internal quotation marks omitted). The first element of this test is easily met in this case. As alleged in the Amended Complaint, Defendant Gardner executed numerous loan documents on behalf of the Village during his tenure as Village Manager. (Back Aff. ¶ 17–21, ECF No. 68-1.) By the terms of the loan agreement, Gardner represented that the Village had "the power and authority to . . . to execute and deliver the Loan Documents to which it is a party and perform [the Village's] obligations under those Loan Documents" and that the loans constituted "the legal, valid and binding obligations of [the Village] enforceable against [the Village] in accordance with [their] terms." (Jan. 5, 2008, General Loan Agreement ¶ 2, ECF No. 14-8.)  These representations serve as the basis for the Plaintiff's claim of misrepresentation against Defendant Gardner and are sufficient to establish intentional conduct on the part of Defendant Gardner.

The second and third elements requires the Court to determine whether Defendant Gardner's actions were "expressly aimed" at Indiana with the knowledge that the effects of those actions would be felt in Indiana. *See Felland*, 682 F.3d at 675. There is significant overlap in the analysis of the second and third requirements. *Tamburo*, 601 F.3d at 704. The parties offer competing arguments concerning these issues. According to Defendant Gardner, "all" of his actions were directed at the state of Michigan. (Def.'s Br. in Supp. 1–2.) Defendant Gardner emphasizes that he met with the Plaintiff's representatives in Michigan and made payments on the loan at the Plaintiff's branch location in Stevensville, Michigan. (*Id.* 10-11.) While acknowledging that he communicated by telephone, fax, and e-mail with Back, the Plaintiff's

Vice-President, Defendant Gardner maintains that these communications were "typically" initiated by the Plaintiff. (*Id.* 11.) Further, Defendant Gardner notes that when he did initiate communications with the Plaintiff, he did so by calling an 800 number, rather than calling Back's office in Indiana directly. (*Id.*) Defendant Gardner asserts that "[t]o the best of [his] knowledge and recollection, his dealings with the Plaintiff were with 1st Source of Michigan, a Michigan-chartered bank, as opposed to 1st Source Indiana, which he believes is a separate entity." (*Id.*) In conclusion, Defendant Gardner stresses that his activities related to negotiating and executing a loan on behalf of the Village were directed towards the Village itself, not the Plaintiff in Indiana. (*Id.*)

The Plaintiff maintains that Defendant Gardner expressly aimed his activities at the Plaintiff in Indiana. In support of this conclusion, the Plaintiff cites numerous faxes, phone calls, and emails with the Plaintiff's representatives located in Indiana. (Pl.'s Resp. in Opp'n 6.) The Plaintiff observes that Defendant Gardner met with its representatives on a number of occasions, knowing that the Plaintiff was an Indiana bank. (*Id.* 2–7.) According to the Plaintiff, Defendant Gardner signed and executed a number of loan documents on behalf of the Village, all of which clearly identified the Plaintiff as an Indiana bank. (*Id.* 2–5.)

Having reviewed the record, the Court finds that Defendant Gardner expressly aimed his actions at the Plaintiff in Indiana with the knowledge that the effects of those actions would be felt in Indiana. Defendant Gardner's contacts with the Plaintiff in this case include multiple in-person meetings with the Plaintiff's representatives; numerous phone calls, emails, and faxes with the Plaintiff's representatives; and, most significantly, the signing and execution of multiple loan documents with the Plaintiff. In the fall of 2006, Defendant Gardner contacted Karl Smith, a

9

friend and Vice President at 1st Source Bank, about obtaining commercial loans from the Plaintiff to fund the Village's downtown revitalization efforts. (Smith Aff. ¶ 5, ECF No. 68-2.) On October 21, 2006, Defendant Gardner had his first in-person meeting with Back to discuss extending commercial loans to the Village. (Back Aff. ¶ 10.) At the time of the meeting, Back's office was located in La Porte, Indiana. (*Id.* ¶ 11.) At their first meeting, Back provided Defendant Gardner with his business card. (*Id.* ¶ 13.) Back's business card indicated that he was an Indiana banker (*id.*) and included Back's Indiana office address, cell phone number, office phone number, and office fax machine number (*Id.* ¶ 4.) The numbers for Back's cell phone, office phone, and office fax machine all had Indiana area codes. (*Id.*) Defendant Gardner met with Back on November 1, 2006, and November 10, 2006, to discuss the terms of the proposed loan. (*Id.* ¶ 14.) At the November 10 meeting, Back delivered a proposal letter to Defendant Gardner. (*Id.* ¶ 15.) The heading of the proposal letter included the Plaintiff's logo, listed the Plaintiff's address in Indiana, and included a phone and fax number with Indiana area codes. (Nov. 10, 2006, Proposal Letter, ECF No. 68-1 at 10.)

On January 5, 2007, Defendant Gardner met with Back at which time Defendant Gardner executed two promissory notes completing the loan transaction between the parties. (Back Aff. ¶ 17.) In the heading of the promissory note, the Plaintiff included South Bend, Indiana, the location of its corporate headquarters. (Jan. 5, 2007, Term Promissory Note, ECF No. 14-3.) The second to last paragraph of the loan agreement states:

> [A]ll claims, causes of action or other adjudicable rights arising . . . in connection with this term promissory note . . . shall be instituted and litigated only in courts having location in the city of South Bend, Indiana and borrower hereby consents to jurisdiction and venue of any state or federal court in such location.

(*Id.*) The last paragraph of the loan agreement states: "This Note and payments due hereunder

are being delivered and accepted in the State of Indiana and shall be . . . governed by the internal laws . . . of the State of Indiana." (*Id.*) On January 5, 2008, Defendant Gardner executed a General Loan Agreement and a Revolving Promissory Note on behalf of the Village. (Back Aff. ¶ 19.) The Revolving Promissory Note contained the same language as the January 5, 2007, Promissory Note. (Jan. 5, 2008, Revolving Promissory Note, ECF No. 68-1 at 13.) The General Loan Agreement described the Plaintiff as an "Indiana financial institution" with its principal office in "South Bend, Indiana." (Jan. 5, 2008, General Loan Agreement, ECF No. 14-4.)

On January 5, 2009, Defendant Gardner executed a Loan Agreement (Unsecured), an Amended and Restated Promissory Note - Revolving, and an Amended and Restated Promissory Note - Term. (Back Aff. ¶ 20.) The Loan Agreement (Unsecured) stated that "[a]ll payments will be given tentative credit when received by [the Plaintiff] in Indiana." (Jan. 5, 2009, Loan Agreement (Unsecured) ¶ 1, ECF No. 14-8.) Further, the Loan Agreement (Unsecured) instructed that any communications regarding the loan be directed to the Plaintiff in Indiana. (*Id.* ¶ 12.) Several months later, on April 5, 2009, Defendant Gardner executed two Amendment Agreements on behalf of the Village. (Back Aff. ¶ 21.) The Amendment Agreements incorporated the terms of the previous Agreements, including the provisions related to the Plaintiff's location in Indiana. (Apr. 5, 2009, Amended Agreements, ECF No. 14-9 at 3–4.)

From October 2006 to May 2009, Defendant Gardner was Back's sole contact at the Village. (Back Aff. ¶ 7.) During that period of time, Back communicated with Defendant Gardner by e-mail, phone calls, and faxes. (*Id.* ¶ 8.) Defendant Gardner called Back at Back's office in Indiana and sent faxes to Back's office Indiana. (*Id.*) The Plaintiff submitted a copy of a fax from Defendant Gardner to Back at his office in Indiana to support this assertion. (Dec. 23,

11

2008, Fax, ECF No. 68-1 at 7.)

As previously noted, Defendant Gardner maintains that he directed his actions towards the Village itself and not the Plaintiff in Indiana. Moreover, he attests that his "dealings with Plaintiff were with 1st Source of Michigan, a Michigan-chartered bank, as opposed to 1st Source of Indiana," which he believed was a separate entity. (Gardner Aff. ¶ 19.) With this statement, Defendant Gardner implicitly argues that he believed the effects of his actions would be felt in Michigan, not Indiana. However, beyond these self-serving assertions, no evidence supports such a conclusion. As recounted above, the record contains overwhelming evidence that Defendant Gardner was informed of the Plaintiff's status as an Indiana bank throughout his course of dealings with the Plaintiff. Back presented Defendant Gardner with a business card indicating that Back's office was located in Indiana and providing Defendant Gardner with Indiana phone and fax numbers. Defendant Gardner communicated by phone and fax with Back at his Indiana office. Most importantly, Defendant Gardner signed and executed numerous loan documents which explicitly stated that the Plaintiff was an Indiana bank.

To the extent that Defendant Gardner states that he dealt with 1st Source Michigan, a separate entity from the Plaintiff in Indiana, the evidence presented by the parties undermines this claim. The Plaintiff submitted a personal affidavit from John B. Griffith, the Plaintiff's Executive Vice President of Administration, General Counsel, and Secretary. (Griffith Aff., ECF No. 68-3.) According to Griffith, the Plaintiff is an Indiana-chartered bank and its branches in Western Michigan are part of its corporate operations and are not a separate Michigan-chartered entity. (*Id.* ¶ 3–5.) Griffith further states that "[t]here is no subsidiary, affiliate, or otherwise related entity of 1st Source named '1st Source of Michigan.' Nor does 1st Source operate or

12

control a Michigan-chartered bank." (*Id.* ¶ 6.) Back corroborates that the Plaintiff's branch operations in Michigan are part of the Plaintiff's corporate operations and are not a separate Michigan-chartered entity. (Back Aff. ¶ 12.) Resolving the disputed facts in the Plaintiff's favor as the Court must, *see uBID, Inc.*, 623 F.3d at 423–24, the Court finds that Defendant Gardner expressly aimed his actions at the Plaintiff in Indiana with the knowledge that the effects of those actions would be felt in Indiana.

"In all cases the point of the purposeful-direction requirement is to 'ensure that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state.'" *Tamburo*, 601 F.3d at 702 (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)) (internal quotation marks omitted). The record does not support Defendant Gardner's argument that his actions and the resulting contacts with the Plaintiff were somehow random or fortuitous. Rather, the record indicates that, over a period of two years, Defendant Gardner engaged in a series of actions directed at the Plaintiff in Indiana for the purpose of obtaining and extending commercial loans. Therefore, the Court finds that the Plaintiff has satisfied the "purposeful direction" requirement.

2.  *Injury "Arises Out of" the Defendant's Contacts With the Forum State*

If a defendant's conduct is purposefully directed to a forum state, the plaintiff must also demonstrate that its injury "arises out of" or "relates to" the actions of the defendant. *Felland*, 682 F.3d at 676 (citing *Tamburo*, 601 F.3d at 708). Here, the Plaintiff's Amended Complaint is sufficient to satisfy even the strictest understanding of the "arises out of" requirement. The Plaintiff contends that its injuries in this case are a direct result of Defendant Gardner's alleged

misrepresentations that the Village had the legal authority to contract for a commercial loan. As the Village Manager who negotiated and executed numerous loan documents, Defendant Gardner's actions in facilitating the loan between the Village and the Plaintiff "were not just incidental but are central," *Felland*, 682 F.3d at 677, to the Plaintiff's claim of misrepresentation. The Court has already concluded that Defendant Gardner expressly aimed his allegedly tortious conduct at the Plaintiff in Indiana with the knowledge that any injury suffered by the Plaintiff would be incurred in Indiana. Although the Seventh Circuit has cast doubt on the premise that a "but for" causal relationship is sufficient to satisfy the "arises out of" requirement, *id.* at 676–77 (citing *GCIU–Emp'r Ret. Fund*, 565 F.3d at 1025), here, the record suggests that Defendant Gardner's actions were both the proximate *and* factual cause of the Plaintiff's alleged injury. That is, the Plaintiff's claims arise directly out of Defendant Gardner's contacts with Indiana. Therefore, the Court finds that the Plaintiff's injury "arises out of" the Defendant Gardner's contacts with Indiana.

3.      *Traditional Notions of Fair Play and Substantial Justice*

In their briefs, neither party addresses whether the exercise of jurisdiction over Defendant Gardner would comport with traditional notions of fair play and substantial justice. Having reviewed the record, the Court concludes that the exercise of personal jurisdiction over Defendant Gardner is consistent with traditional notions of fair play and substantial justice because of the limited burden placed on Defendant Gardner, because of the State of Indiana's interest in providing a forum for legal relief for one of its residents, because of the Plaintiff's interest in obtaining convenient and effective relief, and because of the judicial system's interest

in the efficient resolution of this case.

    a.    Burden on Defendant Gardner

Litigating this case in South Bend imposes a minimal burden on Defendant Gardner. Defendant Gardner is currently incarcerated in the Terre Haute Federal Correctional Complex in Terre Haute, Indiana. (Gardner Aff. ¶ 9.) Prior to his incarceration, Defendant Gardner lived in Michigan from July 1994 through March 2011. (*Id.* ¶ 8.) Defendant Gardner has not presented this Court with a reason to find that the burden of litigating in South Bend would be overly onerous, and the exercise of jurisdiction comports with Seventh Circuit precedent. *See Felland*, 682 F.3d at 677 (Defendant, who was resident of Arizona, would not face heavier burden "than that routinely tolerated by courts exercising specific jurisdiction against nonresidents" if required to litigate in Wisconsin); *Dunlap v. Switchboard Apparatus, Inc.*, No. 1:12-cv-0020-TWP-DKL, 2012 WL 1712554, at *5 (S.D. Ind. May 15, 2012) (noting that Defendant was resident of state neighboring Indiana and finding that assertion of jurisdiction did not violate notions of fair play and substantial justice)*; Stevens v. Walgreen Co.*, No. 4:11-cv-116-WGH-RLY, 2012 WL 1365448, at *4 (S.D. Ind. Apr. 19, 2012) (finding that a Defendant that was a resident of Illinois would have a marginally more difficult time bringing witnesses to the courthouse in New Albany, Indiana, instead of in Louisville, Kentucky, where the incident giving rise to the lawsuit occurred).

    b.    Forum State's Interest in Adjudicating the Dispute

States have a significant interest in providing a forum for their residents to seek legal

relief for injuries suffered within their territory. *See Felland*, 682 F.3d at 677 ("[A]s is almost always the case, Wisconsin has a strong interest in providing a forum for its residents to seek redress for torts inflicted by out-of-state actors and injuries suffered within the state."); *Tamburo*, 601 F.3d at 709 ("Illinois has a strong interest in providing a forum for its residents and local businesses to seek redress for tort injuries suffered within the state and inflicted by out-of-state actors."); *Wine & Canvas Dev., LLC v. Weisser*, — F. Supp. 2d —, No. 1:11-cv-01598-TWP-DKL, 2012 WL 3260234, at *7 (S.D. Ind. Aug. 7, 2012) ("Indiana has an interest in adjudicating this dispute because Wine & Canvas is an Indiana LLC."). Therefore, the Court finds that Indiana has an interest in the present dispute as the Plaintiff is a resident of Indiana and suffered its injuries in Indiana. This factor weighs in favor of exercising personal jurisdiction over Defendant Gardner.

c. Plaintiff's Interest in Obtaining Convenient and Effective Relief

Here, the facts demonstrate that the Plaintiff has an interest in obtaining relief in Indiana. The Plaintiff is a resident of Indiana and has alleged an injury in Indiana. *Cf. Wine & Canvas*, 2012 WL 3260234, at *7 ("Because Wine & Canvas is an Indiana company, it clearly has an interest in obtaining convenient and effective relief, which is best accomplished in Indiana."); *Dunlap*, 2012 WL 1712554, at *5 (stating that a resident of Indiana has interest in obtaining relief in Indiana). Were the Court to dismiss Defendant Gardner from this lawsuit, the Plaintiff would have to bring a separate suit against him in Michigan while still litigating its breach of contract claims against the Village in the Northern District of Indiana. In the Court's view, this potential scenario would be neither convenient nor effective in resolving the instant suit; the

Plaintiff would be compelled to raise the same facts in different forums, needlessly wasting the Plaintiff's time and resources.

d.      The Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies

As previously noted, were the Court to dismiss Defendant Gardner from this lawsuit, the Plaintiff would need to bring a separate lawsuit against him in Michigan while continuing to litigate its contract claims against the Village in the Northern District of Indiana. Although the Plaintiff raises a breach of contract claim against the Village and a claim of misrepresentation against Defendant Gardner, the factual bases for those separate claims are essentially identical. Dismissal would require a court in Michigan to consider the same facts concerning the claim of misrepresentation that this Court would be required to consider in resolving the Plaintiff's breach of contract claim against the Village. Such a dismissal would be contrary to the judiciary's interest in efficient resolution of controversies and management of scarce judicial resources. *Cf. Kopfman v. Ensign Ribbon Burners, LLC*, 803 F. Supp. 2d 914, 919 (N.D. Ill. 2011) (stating that "judicial economy is served by adjudicating the case where the injury occurred"); *Hartford Cas. Ins. Co. v. Foxfire Printing & Packaging, Inc.*, No. 10 C 50298, 2011 WL 4345850, at *6 (N.D. Ill. Sept. 15, 2011) (finding that judicial resources would be conserved "to the extent of any overlap between" cases with identical facts).

e.      The Shared Interest of Several States in Furthering Fundamental Substantive Social Policies

Having reviewed the pleadings, there is no indication that either party is engaging in

17

forum shopping or other behavior that would undermine substantive social policies. This factor is therefore neutral as to either party's position concerning the exercise of jurisdiction.

4.   *Official Versus Individual Capacity*

In his brief, Defendant Gardner places great weight on his status as Village Manager as a basis for granting his Motion to Dismiss. Defendant Gardner argues that the Court does not have personal jurisdiction over him because he acted in his official capacity on behalf of the Village in negotiating and executing the loan agreements with the Plaintiff. (Def.'s Br. in Supp. 4–7.) Defendant Gardner has failed to present any legal authority to support this position. To the extent that capacity could be considered relevant to the analysis of personal jurisdiction, Defendant Gardner overlooks a key fact in this case. At this stage of the proceedings, the Court must accept as true all well-pleaded factual allegations in the Amended Complaint. Here, the Plaintiff alleges that Defendant Gardner misrepresented the Village's legal authority to enter into a loan agreement with the Plaintiff. By its very nature, a claim of misrepresentation implicates an individual in his or her personal capacity. No one suggests that the alleged misrepresentations made by Defendant Gardner were part of an official Village policy. Therefore, the Court understands the Plaintiff to allege that Defendant Gardner's actions that form the basis for its misrepresentation claim were performed in his personal, rather than official, capacity. Defendant Gardner's status as the Village Manager may have legal significance in a motion to dismiss for failure to state a claim or at summary judgment, but his status as Village Manager does not alter the Court's conclusion concerning personal jurisdiction.

**CONCLUSION**

The Court finds that Defendant Gardner purposefully directed his activities at the State of Indiana, that the Plaintiff's alleged injury arises out of the defendant's forum-related activities, and that the exercise of specific jurisdiction over Defendant Gardner comports with traditional notions of fair play and substantial justice. Over a period of more than two years, Defendant Gardner engaged in a series of actions directed at the Plaintiff in Indiana for the purpose of obtaining commercial loans and extending those loans. Therefore, having actively facilitated loan agreements between the Village and the Plaintiff, it should be no surprise to Defendant Gardner that he could be called into court in Indiana.

In determining whether the exercise of jurisdiction over the individual Defendants is permissible, the Court has considered the five reasonableness factors in its "fair play and substantial justice" analysis. These factors do not normally justify a determination against personal jurisdiction when a defendant's minimum contacts are adequate. *Hemi Group*, LLC, 622 F.3d at 760. As the Seventh Circuit stated in *Felland*:

> Jurisdictional rules may not be employed in a manner that puts a defendant at a severe disadvantage, but "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." A party's concern that a forum is particularly unfair or inconvenient "usually may be accommodated through means short of finding jurisdiction unconstitutional."

682 F.3d at 676 (quoting *Burger King*, 471 U.S. at 477) (internal citations omitted). Here, the reasonableness factors reinforce the Court's conclusion that personal jurisdiction is appropriate because of the limited burden placed on Defendant Gardner, the State of Indiana's interest in providing a forum for legal relief for one of its residents, the Plaintiff's interest in obtaining

convenient and effective relief, and the judicial system's interest in the efficient resolution of this case.

Therefore, the Court concludes that the assertion of personal jurisdiction as to Defendant Gardner is appropriate and, for the reasons stated above, the Court DENIES Defendant Gardner's Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 65].

SO ORDERED on February 20, 2013.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION