## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

1ST SOURCE BANK,                      )
                                     )
      Plaintiff,                    )
                                     )
      v.                            )     CAUSE NO.: 3:11-CV-205-TLS
                                     )
VILLAGE OF STEVENSVILLE, *et al.*,   )
                                     )
      Defendants.                   )

## OPINION AND ORDER

This matter is before the Court on the Plaintiff's Motion for Summary Judgment On Its

Breach-Of-Contract Claim [ECF No. 69] filed on May 9, 2012. The Defendants, the Village of

Stevensville and the Village of Stevensville Downtown Development Authority, filed their

Response in Opposition to Plaintiff's Motion for Summary Judgment [ECF No. 70] and their

Cross-Motion for Summary Judgment [ECF No. 71] on June 5, 2012. The Defendants' Cross-

Motion asserts that they are entitled to summary judgment on the Plaintiff's claims of (1) breach

of contract and (2) unjust enrichment. Thereafter, the Plaintiff filed its Consolidated Summary-

Judgment Reply and Response [ECF No. 76] and a Rule 56 Motion to Strike Inadmissible

Evidence [ECF No. 77] on July 5, 2012. The Defendants filed their Response in Opposition to

Plaintiff's Rule 56 Motion to Strike Inadmissible Evidence [ECF No. 80] and their Sur-Reply

Brief in Opposition to Plaintiff's Motion for Summary Judgment and Reply Brief in Support of

Motion for Summary Judgment [ECF No. 81-1] on July 20, 2012. On July 30, 2012, the Plaintiff

filed its Reply in Support of Plaintiff's Rule 56 Motion to Strike Inadmissible Evidence [ECF

No. 83]. The parties have fully briefed the relevant issues and the Court has reviewed their

pleadings.

      For the reasons that follow, the Court finds that the Defendants are obligated to repay the

loan proceeds to the Plaintiff. Although the Court resolves the question of liability in favor of the Plaintiff, an evidentiary hearing and/or additional briefing will be necessary to determine damages.

## BACKGROUND

This diversity action arises out of a series of loans made by the Plaintiff, 1st Source Bank, to the Village of Stevensville, Michigan (the Village) and the Village of Stevensville Downtown Development Authority (DDA) (collectively Stevensville). In 2010, the Village and the DDA defaulted on those loans. The Plaintiff, a bank organized and existing under the laws of Indiana and located in Indiana, brought the present suit to enforce its rights under the loan agreements.

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in her favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56-1(a) (stating that the movant must provide a "'Statement of Material Facts' that identifies the facts that the moving party contends are not genuinely disputed"). In response, the nonmoving party

cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000); N.D. Ind. L.R. 56-1(b) (directing that a response in opposition to a motion for summary judgment must include "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary").

The court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). A district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

## PLAINTIFF'S MOTION TO STRIKE

The Plaintiff requests that the Court strike: (1) the Defendants' Statement of Material Facts; (2) the Defendants' allegations that Defendant Gardner embezzled money from the Village; and (3) the legal-opinion letters submitted to the Court by the Defendants as designated evidence in support of their Motion for Summary Judgment. (Pl.'s Mot. to Strike 1, ECF No. 77.) In the Plaintiff's view, the Defendants' Statement of Material Facts and allegations concerning Defendant Gardner's embezzlement are unsupported by any facts in evidence. (*Id.* 2–4.) The Plaintiff contends that the legal-opinion letters submitted by the Defendants are inadmissible hearsay. (*Id.* 4–5.)

### A.      The Defendants' Statement of Material Facts

The Defendants' Brief in Opposition to the Plaintiff's Motion for Summary Judgment contains the following Statement of Material Facts:

1)      That the Village and the DDA are municipal corporations pursuant to Michigan Law;

2)      That as a municipal corporation, the Defendants were required to have authority to enter into a loan transaction with 1st Source Bank;

3)      That 1st Source Bank did not exercise its own due diligence to independently ascertain whether the Village was authorized to enter into the loan transactions at issue in this lawsuit;

4)      That the former Village Manager, Todd Gardner, embezzled funds received by loan from 1st Source, and is now in federal prison as a result of his conviction;

5)      That neither the Village nor the DDA was not authorized, by law, to enter into the loan transaction with 1st Source;

6)      That the loan contracts between 1st Source and the Village/DDA are void and

4

unenforceable as a matter of law, and can not (sic) be repaid.

(Defs.' Br. in Opp'n 2–3, ECF No. 70.) The Plaintiff maintains that this entire section should be stricken because the statements are legal conclusions rather than statements of fact. (Pl.'s Mot. to Strike 2–3.) In their Response, the Defendants assert that "[t]he issue in this case is primarily legal - whether the loans at issue were authorized pursuant to Michigan statute, and if not, pursuant to law whether the loans are void and unenforceable." (Defs.' Br. in Opp'n to Pl.'s Mot. to Strike 1, ECF No. 80.) Continuing, the Defendants state that "[t]hose arguments, and the facts necessary to address those arguments, have been adequately and properly presented" by the Defendants. (*Id.*) In its Reply, the Plaintiff emphasizes that the Defendants' Statement of Material Facts "contains nothing but legal arguments and conclusory allegations, neither of which are admissible to support or oppose a motion for summary judgment." (Pl.'s Reply Br. Supporting Pl.'s Mot. to Strike 1, ECF No. 83.)

Under Local Rule 56-1, any party moving for summary judgment must submit a statement of material facts as to which that party contends there is no genuine issue. The purpose of Rule 56-1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006). In reviewing a party's statement of material facts, a court must "eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement." *Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 771 (N.D. Ill. 2012).The Seventh Circuit has consistently held that district courts may mandate and enforce strict compliance with Local Rule 56-1. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Metro. Life Ins. Co. v. Johnson*, 297

F.3d 558, 562 (7th Cir. 2002); *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th

Cir. 2000); *Waldridge*, 24 F.3d at 922.

The Court agrees with the Plaintiff that the Defendants' Statement of Material Facts

contains many statements that are legal conclusions and not factual assertions. Consequently, the

Court will disregard Statements Two, Three, Five, and Six for purposes of ruling on the parties'

motions for summary judgment. These statements are legal arguments and "any statements or

responses that contain legal conclusions or argument . . . will not be considered by the Court in

ruling on the summary judgment motions." *Phillips*, 855 F. Supp. 2d at 771–72. *See also Malec*

*v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (holding that where a party offers a legal

conclusion in a statement of fact, the Court will not consider that statement). However, the Court

will consider Statement One in ruling on the summary judgment motions, which provides that

the Defendants are municipal corporations pursuant to Michigan law. This is a factual statement

with ample evidentiary support in the record.

The Court will disregard part of Statement Four, which states "[t]hat the former Village

Manager, Todd Gardner, embezzled funds received by loan from 1st Source, and is now in

federal prison as a result of his conviction." Pursuant to Federal Rule of Evidence 201, the Court

takes judicial notice of Defendant Gardner's federal conviction for wire fraud. *See Ennenga v.*

*Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012) ("A court may take judicial notice of facts that are

(1) not subject to reasonable dispute and (2) either generally known within the territorial

jurisdiction or capable of accurate and ready determination through sources whose accuracy

cannot be questioned.") (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d

1074, 1081 (7th Cir. 1997)). However, the Defendants cite to no evidence in support of their

6

contention that Defendant Gardner embezzled money specifically from the loan proceeds at issue in this case. Consequently, the Court will disregard the phrase "embezzled funds received by loan from 1st Source" in its consideration of the parties' summary judgment rulings.

**B.      Allegations that Defendant Gardner Embezzled Portions of the Loan Proceeds**

Second, the Plaintiff requests that this Court strike a portion of the Defendants' "Factual Background" section in their Response in Opposition. (Pl.'s Mot. to Strike 3–4.) The challenged assertion is that Defendant Gardner "was not using the funds from the Term Promissory Note and Revolving Promissory Note for the purposes for which they were intended." (Defs.' Br. in Opp'n 4–5.) The Plaintiff asserts that "[t]he Village has designated no evidence supporting these conclusory allegations." (Pl.'s Mot. to Strike 3.) The Court agrees with the Plaintiff. While the Court may take judicial notice of Defendant Gardner's conviction for wire fraud, the Defendant has not presented any admissible evidence to support the conclusion that Defendant Gardner embezzled the proceeds of the loans at issue in this case. Consequently, the Court will disregard these unsupported allegations for purposes of summary judgment.

**C.      Legal Opinion Letters**

In support of their Response in Opposition to the Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment, the Defendants submitted two legal opinion letters, which address the legality of the Defendants' loan agreement with the Plaintiff. (Axe Letter, ECF No. 70-9; Wendt Letter, ECF No. 70-10.) The Plaintiff urges the Court to strike these letters because they are inadmissible hearsay and because they contain legal

conclusions on the ultimate issue for this Court to decide. (Pl.'s Mot. to Strike 4.) In Response, the Defendants emphasize that they have not requested that the Court adopt the legal conclusions contained in these letters. (Defs.' Br. in Opp'n 2.) Instead, the Defendants assert that the legal opinion letters were presented as exhibits in support of their factual background section of their brief to provide context to the history of the dispute between the parties and to explain why the Defendants stopped repaying the loans. (*Id.*) Contrary to the Plaintiff's argument, the Defendants maintain that the letters are not being offered for the truth of the matters asserted in the letters. (*Id.*) In Reply, the Plaintiff argues that the Defendants have cited no authority for their position that the legal opinion letters can be considered for the purpose of factual background and that there is sufficient evidentiary material already before the Court, which provides relevant context and is also admissible. (Pl.'s Reply Br. 4.)

For the limited purpose of providing context to the dispute at hand, the Court will allow the legal opinion letters to remain a part of the record. But these letters will not be considered in the Court's legal analysis of whether the Defendants had the authority to take out a loan from the Plaintiff and whether the Defendants are obligated to repay that loan now.


## STATEMENT OF FACTS

The following facts are supported by citations to materials in the record:

On April 10, 2006, the Village hired Defendant Todd Gardner for the position of Village Manager. In October and November 2006, Defendant Gardner met with Eric Back, one of the Plaintiff's Vice-Presidents, to discuss the possibility of obtaining commercial loans from the Plaintiff to fund the Village's downtown revitalization efforts. (Back Aff. ¶¶ 10, 14, ECF No. 68-

1.) Following Back's meetings with Gardner, the Village's Attorney, Defendant David M.

Peterson, II, sent the Plaintiff an opinion letter on December 11, 2006, stating that the Village

was authorized to borrow and incur debt obligations not to exceed 10% of the assessed valuation

of real and personal property within the Village. (Peterson Opinion Letter, ECF No. 70-2.)

Peterson asserted that the Village could borrow up to $3,000,000 pursuant to MCL § 69.22 and

that the Village was a "qualified small issuer" as defined by 26 U.S.C. § 265. (*Id.*)

 After reviewing Peterson's opinion letter, the Village Council passed a Resolution on

December 21, 2006, authorizing Gardner to "to obtain a line of credit of up to $1,000,000 to

finance projects that directly benefit the Village." (Dec. 2006 Resolution, ECF No. 14-1.) Up to

$700,000 could be used to develop the downtown district and up to $300,000 could be used to

make capital improvements and repairs to Village property. (*Id.*) Based on the December 2006

Resolution, Gardner executed two promissory notes on behalf of the Village on January 5, 2007.

(Jan. 5, 2007, Promissory Notes, ECF No. 14-3.) The notes were unsecured, but required the

Village to keep its deposits with the Plaintiff. (*Id.*) The Term Promissory Note was in the amount

of $700,000 and required monthly interest payments for two years until the balance came due on

January 5, 2009. (Jan. 5, 2007, Term Promissory Note, ECF No. 14-3 at 1–2.) The Revolving

Promissory Note was in the amount of $300,000 and required monthly interest payments for a

year until the balance came due on January 5, 2008. (Jan. 5, 2007, Revolving Promissory Note,

ECF No. 14-3 at 3–4.)

 In January 2008, the parties agreed to an extension of the due date on the $300,000 loan.

Gardner executed a General Loan Agreement and a Revolving Promissory Note on behalf of the

Village on January 5, 2008. The General Loan Agreement and Revolving Promissory Note

9

extended the due date of the $300,000 loan to January 5, 2009. (Jan. 5, 2008, General Loan Agreement, ECF No. 14-4; Jan. 5, 2008, Revolving Promissory Note, ECF No. 68-1 at 12–13.) Later that year, on December 23, 2008, the Village Council voted to authorize the Village to obtain a ninety-day extension on the loans from the Plaintiff. (Dec. 2008 Resolution, ECF No. 14-5.) Following the passage of the Resolution, on January 5, 2009, Gardner executed a Loan Agreement (Unsecured), an Amended and Restated Promissory Note - Revolving, and an Amended and Restated Promissory Note - Term. The Loan Agreement and Promissory Notes reaffirmed the terms and conditions of the loan documents previously executed by Defendant Gardner on behalf of the Village and extended the loans' due dates to July 5, 2009. (Jan. 5, 2009, Loan Documents, ECF Nos. 14-7, 14-8.) On March 19, 2009, the Village Council voted to authorize the Village to obtain a second ninety-day extension on the loans from the Plaintiff. (Mar. 2009 Resolution, ECF No. 14-9 at 1–2.) Gardner executed two Amendment Agreements on behalf of the Village on April 5, 2009, extending the due date of the loans until July 5, 2009. (Apr. 5, 2009, Amendment Agreements, ECF No. 14-9 at 3–4.)

On May 13, 2009, the Village Council voted not to renew Gardner's contract as Village Manager. (Answer to Am. Compl. ¶ 71, ECF No. 32.) Shortly thereafter, the Village requested the Plaintiff's help in reconstructing its financial records (*Id.* ¶ 72) and the Michigan Department of Treasury (MDOT) began an audit of the Village's finances (*Id.* ¶ 79).

On June 18, 2009, the Village Council voted to authorize the Village to obtain a 180-day extension on the loans from the Plaintiff. (June 2009 Resolution, ECF No. 45-1 at 32.) To facilitate the extension of the loan agreement with the Plaintiff, on July 16, 2009, the Village Council voted to approve a resolution declaring that Trustee Kim Peters, Treasurer Dawn Rush,

DDA Member Shirley Kerlikowske, and Village President Lori Gibson had the authority "to sign revolving line of credit documents for 1st Source Bank on behalf of the [Village and DDA]." (July 2009 Resolution, ECF No. 14-13.) On July 5, 2009, Co-Defendants Peters, Rush, Kerlikowske, and Gibson executed two Amendment Agreements on behalf of the Village, extending the loans due date until January 5, 2010. (July 5, 2009, Amendment Agreements, ECF No. 14-10.) The Amendment Agreements "confirmed" the loan agreement between the parties and stated that "all terms and conditions therein shall remain in full force and effect." (*Id.*)

During the course of auditing the Village's finances, MDOT expressed doubts over the Village's authority to take out a loan from the Plaintiff. On December 29, 2009, MDOT sent the Village's attorney and the Village Council president a letter, which stated "[u]nder most circumstances, a bank note issued without Department of Treasury approval is not allowed." (Answer to Am. Compl. ¶ 86; Dec. 29, 2009, MDOT Letter, ECF No. 70-7.) The letter further stated that "[a] municipality must have specific statutory authority to enter into any obligation. It is not clear whether there is statutory authority for the notes" held by the Plaintiff. (Dec. 29, 2009, MDOT Letter.)

On January 5, 2010, Peters, Rush, Kerlikowske, and Gibson signed an Amended and Restated Promissory Note - Term on behalf of the Village, ratifying and reaffirming the terms and conditions of the loans and extending the payment due dates. (Jan. 5, 2010, Amended and Restated Promissory Note, ECF No. 14-12 at 1.) Shortly thereafter, on January 10, 2010, the Village Council voted to authorize the Village to obtain the additional extension on the loans from the Plaintiff. (Jan. 10, 2010, Resolution, ECF No. 14-11 at 3–4.)

MDOT formally issued its audit report of the Village's finances on January 21, 2010.

(Answer to Am. Compl. ¶ 81.) According to MDOT's report, "the Village may have obtained an illegal loan" from the Plaintiff and directed the Village "to seek legal counsel on the validity of the loan." (*Id.* ¶ 87.) Defendant Peterson, in his capacity as the Village's attorney, responded to MDOT's December 29, 2009, letter on January 27, 2010, citing MCL § 69.22 and/or MCL § 125.1663a as the specific statute(s) authorizing the Village to enter into loan agreements with the Plaintiff. (Jan. 27, 2010, Peterson Letter, ECF No. 70-8.)

On March 11, 2010, the Village Council voted to authorize the Village to obtain an additional extension on the loans from the Plaintiff. (Mar. 11, 2010, Resolution, ECF No. 14-11.) On behalf of the Village, Peters, Rush, Kerlikowske, and Gibson signed two Amendment Agreements on March 31, 2010, which stated that the loan agreement between the Village and the Plaintiff "and all other documents and agreements executed in connection therewith are hereby confirmed in all respects, and all terms and conditions therein shall remain in full force and effect." (Mar. 31, 2010, Amendment Agreements, ECF No. 14-12 at 3–4.) The Amendment Agreements extended the due date of the loans until September 27, 2010. (*Id.*)

In August 2010, the Village transferred approximately $277,111.06 from its accounts with the Plaintiff to depository accounts at JPMorgan Chase Bank, N.A. (Johnston Aff. ¶ 4, ECF No. 69-3.) The Village also transferred another $28,428.37 from its tax account with the Plaintiff to an account with JPMorgan Chase. (*Id.* ¶ 6.) On September 8, 2010, Attorney John Axe, issued a letter to the Village, stating his opinion "that the loan transaction [with the Plaintiff] was not authorized by law and therefore [was] an illegal borrowing which the Village  may not repay." (Axe Letter, ECF No. 70-9.) The Village stopped making loan payments and did not repay the principal balance when the loans matured on September 27, 2010. (Answer to Am. Compl. ¶ 95.)

12

Consequently, on May 13, 2011, the Plaintiff filed its Complaint [ECF No. 1] alleging breach of contract and unjust enrichment.

## DISCUSSION

This case turns on the resolution of two related issues. The first issue is whether the Defendants had statutory authorization to obtain a loan from the Plaintiff. Second, if the Defendants were not authorized to obtain a loan from the Plaintiff, the Court must analyze whether the Defendants are nonetheless required to repay the proceeds of that loan to the Plaintiff.

The Defendants maintain that they lacked legal authority to obtain loans from the Plaintiff. Therefore, the Defendants argue, the loans are void and unenforceable. In contrast, the Plaintiff argues that the Defendants had express authority pursuant to Michigan statute to take out the loans from the Plaintiff. Given that the Defendants had express legal authority, the Plaintiff asserts that the loan agreement between the parties is enforceable and that the Defendants are obligated to repay the loan. Arguing in the alternative, assuming that the Defendants did not have express legal authority to take out a loan, the Plaintiff contends that the Defendants are obligated to repay the loan under the doctrine of estoppel or unjust enrichment.

The Court will assume without deciding that the loans from the Plaintiff to the Defendants were not legally authorized under Michigan law.[1] To resolve the remaining issues,

---

[1] "[A] federal court sitting in diversity must proceed with caution in making pronouncements about state law." *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092 (7th Cir. 1999). This is true because "federal court pronouncements on the content of state law inherently involve a significant intrusion on the prerogative of the state courts to control that development." *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1416 (7th Cir.1994) (Ripple, J., dissenting on other grounds). If a federal court's predications are inaccurate:

[U]ntil corrected by the state supreme court, [they] inevitably skew the decisions of [those]

13

the Court will first conduct a conflict-of-laws analysis to determine whether Michigan or Indiana

law applies in this case. Second, the Court will analyze whether the Plaintiff may recover on its

breach of contract or unjust enrichment claims under both Michigan and Indiana law.


A.      **Conflict of Laws**

Assuming without deciding that the loan agreements are void and unenforceable, the

forum selection clause[2] in those agreements would not apply in this case. Consequently, the

Court must determine whether Michigan or Indiana law applies in this case. When neither party

raises a conflict of law issue in a diversity case, the federal court applies the law of the state in

which the federal court sits. *See Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*,

---

who rely on them and inequitably affect the losing federal litigant who cannot appeal the
decision to the state's supreme court; they may even mislead lower state courts that may be
inclined to accept federal predictions as applicable precedent.

*Lexington Ins. Co.*, 165 F.3d at 1093 (quoting Dolores K. Sloviter, *A Federal Judge Views Diversity
Jurisdiction through the Lens of Federalism*, 78 Va. L. Rev. 1671, 1681 (1992)).

Here, the parties have presented arguments concerning the legal authority of a Michigan
municipal corporation to take out a loan. This issue implicates questions of constitutional and statutory
interpretation for which there is no Michigan precedent on point. Mindful of principles of comity and
federalism, the Court will resolve this case without deciding a novel issue of Michigan law.

In order for the Defendants to succeed in this case, they must demonstrate that (1) Stevensville
lacked statutory authority to take out the loan from the Plaintiff and (2) that the Plaintiff has no alternative
basis for recovering the balance remaining on the unpaid loans. Regardless of the Defendants' statutory
authority to obtain a loan from the Plaintiff, as discussed below, the Plaintiff may recover the unpaid
balance on the loan agreements from the Defendants.

[2] "This Note and payments due hereunder are being delivered and accepted in the State of Indiana
and shall be interpreted, construed and governed by the Internal laws, and the laws of conflicts, of the
state of Indiana." (Jan. 5, 2007, Term Promissory Note, ECF No. 14-3 at 2); (Jan. 5, 2007, Revolving
Promissory Note, ECF No. 14-3 at 4.) (*See also* General Loan Agreement ¶ 8(d), ECF No. 14-4 ("Unless
expressly provided to the contrary, the Loan Documents and all other instruments provided pursuant to
the Loan Documents are contracts made under the laws of the State of Indiana and, except to the extent
the federal laws of the United States are applicable, shall be Interpreted, construed and governed by the
internal laws, and not the law of conflicts, of the state of Indiana.").)

712 F.3d 336, 341 (7th Cir. 2013) (citing *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 587 n.1 (7th Cir. 2012) ("We do not worry about conflict of laws unless the parties disagree on which state's law applies. Further, when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.")). Here, the parties have not raised a conflict of law issue. Instead, the parties have briefed the issues on the merits under both Indiana and Michigan law. Neither party articulates any rationale for applying the law of one state over that of the other. Nor does either party argue that there is a disagreement over what law should apply. The parties have effectively taken no position as to which state's law should apply. Consistent with *Koransky, Bouwer & Poracky, P.C.* and with *Citadel Group Ltd.*, the Court will apply the law of Indiana because the parties have not raised any conflict of law issue. However, for the sake of completeness, the Court will conduct an alternative analysis of the parties' claims under Michigan law as well.

**B.      The Plaintiff May Recover From the Defendants**

The Defendants maintain that "unauthorized contracts, such as those the Village and 1st Source Bank entered into, are void and have no effect." (Defs.' Br. in Opp'n 11.) Therefore, in the Defendants' view, the Plaintiff may not recover on the loan agreements. In its Response, the Plaintiff argues that "[e]ven if the Village was required to follow the procedures of the Revised [Municipal Finance] Act when borrowing from 1st Source (and it wasn't), the Village is estopped from denying the legality of its loan agreements with 1st Source because it retained the contract's benefits—*i.e.*, the loan proceeds." (Pl.'s Summ. J. Reply and Resp. 22.)

15

1.      Indiana Law

Indiana law requires municipal corporations to exercise their limited powers in strict

compliance with the manner prescribed by statute—where a municipal corporation executes a

contract in an irregular manner, Indiana courts do not permit the application of the doctrine of

estoppel. The Defendants cite a number of cases in support of this position. In *Platter v. Board of

Commissioners of Elkhart County*, 2 N.E. 544 (Ind. 1885), the defendant, a municipality,

contracted with the plaintiff to sell a tract of land. The plaintiff fulfilled his obligations under the

contract and the land was transferred to him. *Id.* at 545–48. Following the transfer of land, a

newly elected commissioner sought to set aside the sale of the land to the plaintiff, alleging that

the defendant failed to comply with certain statutory requirements applicable to municipal

corporations in contracting for the sale of public lands. *Id.* at 548. Thereafter, the defendant

demanded rescission of the contract and returned the plaintiff's payment to him. *Id.* The plaintiff

filed suit seeking enforcement of the contract. The court found that the doctrine of estoppel was

inapplicable and that the contract could not be enforced because the defendant failed to comply

with the statutory requirements for the sale of property. *Id.* at 556–57. According to the court, in

dealing with public officers, "[the plaintiff] was bound at his peril to ascertain the scope of their

authority, and cannot found any claim upon acts done by those officers in excess of their

statutory authority." *Id.*

The court's holding in *City of LaPorte v. Gamewell Fire-Alarm Telegraph Co.*, 45 N.E.

588 (Ind. 1896), was consistent with *Platter*. In *Gamewell Fire*, the defendant corporation

contracted with the plaintiff city to install a fire alarm system. When the defendant sought

payment after fulfilling its obligations, the plaintiff refused payment. *Id.* at 589. On appeal, the

16

plaintiff argued that the contract with the defendant was void because the contract caused the

plaintiff to exceed the indebtedness limit in the Indiana constitution for municipal corporations.

*Id.* The court reiterated that "[i]t is the duty of persons dealing with public officers to take notice

of their official and fiduciary character, and that they can only bind the public corporation they

represent in the manner and to the extent authorized by law," *id.* at 591, and found that the

contract was unenforceable because the plaintiff lacked the power to enter into it in the first

place. *Dickerson v. Board of Commissioners of Vigo County*, 199 N.E. 881 (Ind. Ct. App. 1936),

is another Indiana case that is consistent with the holdings in *Platter* and *Gamewell Fire*.

      *City of Gary v. Major*, 822 N.E.2d 165, 171 n.3 (Ind. 2005), provides the clearest

restatement of the rule against applying the doctrine of estoppel in cases where a municipal

corporation exercises its authority in contravention of statutory requirements:

> We do observe . . . that the long established rule in this jurisdiction is that municipal
> officers have no power to enter contracts except where that authority is expressly
> granted by statute; and municipal officers must pursue and exercise such authority
> in strict compliance with the mode prescribed by statute. *Contracts made by officers
> without following the prescribed mode are void and unenforceable.*

(emphasis added) (citing *Bd. of Comm'rs of Henry Cnty. v. Gillies*, 38 N.E. 40, 42 (1894); *State*

*ex rel. Keith v. Common Council of Mich. City*, 37 N.E. 1041, 1044 (1894); *Platter*, 2 N.E. at

554). Although not central to the court's holding in *Major*, this passage demonstrates the

continuing vitality of the Indiana Supreme Court's previous pronouncements requiring municipal

corporations to contract in strict compliance with statutory requirements.

      Fortunately for the Plaintiff, Indiana courts permit recovery against municipal

corporations under a theory of quantum meruit. In *Schipper v. City of Aurora*, 22 N.E. 878

(1889), the defendant city entered into a lease agreement with the plaintiff for a parcel of land

17

the plaintiff intended to use as a private landing. The plaintiff alleged that the defendant failed to

fulfill its obligations under the lease and sought damages; in response, the defendant asserted

that it exceeded its power in attempting to lease the tract of land to the plaintiff and therefore the

plaintiff could not recover on the lease. *Id.* at 880. The Indiana Supreme Court rejected this

argument, stating:

> Where a city or municipality receives the benefit of money, labor, or property upon
> a contract made without due formality, or which it had no authority to make, and
> which it refuses to execute, it will nevertheless be liable to the person conferring the
> benefit to the extent of the value of what has been received and appropriated, unless
> the contract was prohibited by statute, or in violation of public policy.

*Id.* at 879.

Similarly, in *Boyd v. Black School Township*, 23 N.E. 862 (Ind. 1890), the plaintiff

sought payment on a promissory note executed by the defendant township to purchase school

furniture. Indiana statutes required the township trustee to obtain an order from the board of

county commissioners prior to executing such a promissory note, but the township trustee failed

to comply with this statutory requirement. *Id.* at 862–63. Consequently, the defendant argued

that the promissory note was void and unenforceable. In response to this argument, the Indiana

Supreme Court held:

> where it fairly appears that the contract was invalid for want of a compliance with
> the statute, the right to recover does not rest upon the contract, but upon the fact that
> the township received and enjoyed the benefit of property suitable and necessary for
> the use of the schools.

*Id.* at 863. Therefore, the court ordered that the trial court's decision in favor of the plaintiff be

affirmed. *Id.*

The line of reasoning set forth in *Schipper* and *Boyd* continued to develop throughout the

20th century. In *City of New Castle v. Dingle*, 114 N.E. 221 (Ind. 1916), the plaintiff city hired

18

the defendant to construct a road and sidewalks in the City of New Castle. The defendant completed the contracted work as requested pursuant to the written contract and bond executed by the plaintiff. *Id.* The plaintiff refused payment, arguing as one of its defenses that the contract and bond in question were void because it failed to execute the written contract and file the bond in the manner prescribed by statute. *Id.* at 224. The court noted that the contract was performed and "after having accepted the work and consequent benefits of the contract and bond, the city cannot be heard to set up any irregularity in the execution of the contract and bond to which it was a party and, as alleged in the reply, for which it was to blame." *Id.* Therefore, the court concluded, "[i]t was [the plaintiff's] duty to either accept or reject the bid of appellees at the time, and not after it had received all the benefits for which the contract and bond provide." *Id.* (collecting cases).

*Reith-Riley Construction Co. v. Town of Indian Village*, 214 N.E.2d 208 (Ind. Ct. App. 1966), and *Heeter v. Western Boone County Community School Corp.*, 259 N.E.2d 99 (Ind. Ct. App. 1970), provide the most thorough modern discussion of municipal liability for contracts executed in an irregular manner. In *Reith-Riley*, the defendant town contracted with the plaintiff contractor to provide materials and perform the labor necessary to improve the streets of Indian Village. 214 N.E.2d at 209. The defendant accepted the plaintiff's proposal but failed to comply with an Indiana statute that required specification, advertising, and the consideration of competitive bids prior to executing a contract for public works projects. *Id.* at 209–10. On appeal, the defendant argued that its failure to comply with this statute rendered the contract void and unenforceable. In its decision, the court observed that "[Indiana] has attempted to limit its liability and that of its units, the cities, towns and others by specified statutes requiring formality

19

of proceedings, contracts, bids, and specifications. These enactments have been held binding in various degrees over the years." *Id.* at 210. The court proceeded to cite the holdings in *Schipper* and *Boyd*, finding that "if the contract be invalid for want of compliance with a statute but the town receives and enjoys the benefits, the town is nevertheless liable to pay the actual value of what it received." *Id.* at 211. In the court's view, "there is not one law for the state and another for its subjects. Where the state contracts with individuals[,] the rights and obligations of the contracting parties rest on the same principles as if both parties were private persons." *Id.* (citing *State v. Feigel*, 178 N.E. 435 (Ind. 1931)).

In *Heeter*, the defendant school corporation hired the plaintiff, an architect, to provide his services for a school construction and remodeling project. The defendant's governing board was aware that the plaintiff was planning and creating a program of school construction and remodeling and no members of the board objected to the plaintiff's program. 259 N.E.2d at 100. On at least three occasions, the plaintiff requested that the defendant enter into a written contract with him. *Id.* at 101. On each occasion, the defendant's superintendent "assured [the plaintiff] that he would be employed as an architect throughout all phases of construction and remodeling." *Id.* The court reviewed the decisions in *Schipper*, *Boyd*, and *Reith-Riley*, and summarized the elements for recovery as set forth in *Reith-Riley*:

> (1) There must be proof that services were rendered in favor of the municipal corporation in question.

> (2) Such services must have been rendered with the full knowledge of the governing body of such municipal corporation.

> (3) The governing body of such municipal corporation have knowingly accepted the benefits of such services.

> (4) The purported contract for such services shall not be wholly beyond the scope of

the municipal corporation's powers.

*Heeter*, 259 N.E.2d at 104. The court consequently reversed the trial court's denial of recovery

under the plaintiff's quantum meruit theory.

Collectively, these cases support recovery where a contract with a municipal corporation

is executed in an irregular fashion but the municipal corporation retains the benefits of the

contract.[3] Here, the Defendant retained the benefits of the loan agreements, used a portion of the

loan proceeds to purchase real estate in downtown Stevensville for the purposes of

redevelopment, and refused to repay the loan to the Plaintiff on grounds that the Defendants had

not complied with statutory requirements in executing the loan agreements. "It is long-standing

law in Indiana that despite the invalidity of a contract, a city may be liable to pay the actual

value of what it has received and enjoyed." *Bd. of Public Works of Hammond, Ind. v. L. Cosby*

*Bernard & Co.*, 435 N.E.2d 575, 578 (Ind. Ct. App. 1982) (citing *Boyd*, 23 N.E. 862; *Schipper*,

22 N.E. 878). Accordingly, applying the law of Indiana, the Court will rule in favor of the

Plaintiff.


2.      Michigan Law

In the alternative, applying Michigan law to the facts of this case, the result is the same.

"'In an action on a contract which is not ultra vires, a municipal corporation may not shield itself

behind a defense based on the manner in which the contract was made, and retain the benefits of

---

[3]*Laramore & Douglass, Inc., v. City of Anderson*, 222 F.2d 480, 483 (7th Cir. 1955), does not alter the result in this case. *Schipper*, *Boyd*, and *Dingle* remain binding precedent under Indiana law. Courts continue to cite them for the proposition that a plaintiff may recover against a municipal corporation where a contract with a municipal corporation is executed in an irregular fashion but the municipal corporation retains the benefits of the contract. *See Bd. of Public Works of Hammond, Ind. v. L. Cosby Bernard & Co.*, 435 N.E.2d 575, 578 (Ind. Ct. App. 1982); *Heeter*, 259 N.E.2d 99; *Reith-Riley Constr.Co.*, 214 N.E.2d 208.

the contract, without tendering at least a reasonable compensation for the benefits received.'"
*Hatch v. Maple Valley Twp. Unit Sch.*, 17 N.W.2d 735, 739 (Mich. 1945) (quoting *Webb v. Wakefield Twp.*, 215 N.W. 43, 45 (Mich. 1927)). *See also* 20 Mich. Civ. Jur. Public Contracts § 52 (2013) ("Where contracts entered into by municipal officers are made irregularly, but are not ultra vires, and the township retains and enjoys the benefits without protest, it is obligated to pay a reasonable compensation" (citing *Webb*, 215 N.W. at 45)); 10A E. McQuillin, Law of Municipal Corporations § 29:106 (3d ed. 2013) ("If the power is clearly vested but is irregularly or defectively exercised by the municipality and its officers and agents, the case presents a defective execution of the power only, and this affords a basis for the application of the doctrine of equitable estoppel" (citing *Di Ponio v. Garden City*, 30 N.W.2d 849 (Mich. 1948)). Beginning in the nineteenth century, Michigan courts recognized that municipalities were obligated to repay contracts where: (1) the municipality had the general power to enter into the contract; (2) the parties carried out the contract; and (3) the municipality received the full benefit of the contract. *See Arbuckle-Ryan Co. v. City of Grand Ledge*, 81 N.W. 358, 360 (Mich. 1899). Municipalities were obligated to repay in these circumstances *even if the contract was executed in an irregular manner*. *See Bogart v. Twp. of Lamotte*, 44 N.W. 612, 613 (Mich. 1890) ("Courts have held that when the power is shown in the municipal corporation to [take some action], but there were irregularities in its execution, such corporation may be estopped to deny that the power was properly executed.").

The most thorough modern restatement of this principle of law comes from *Parker v. West Bloomfield Township*, 231 N.W.2d 424 (Mich. Ct. App. 1975). The court began its analysis, stating that "estoppel may arise pursuant to the positive acts of municipal officials

which induced plaintiff to act in a certain manner, and where plaintiff relied upon the official's

actions by incurring a change of position or making expenditures in reliance upon the officials'

actions." *Id.* at 428 (citing 9 E. McQuillin, Law of Municipal Corporations § 27.56, pp. 755–57

(3d ed.)). The court continued:

> A municipality may be subject to the doctrine of estoppel in certain situations. A
> significant Michigan decision on this question is *Webb v. Wakefield Township* . . . ,
> wherein the Court collected a number of previous authorities and said that while a
> municipal corporation may not go beyond its powers, the defense of Ultra vires is
> inapplicable where the subject matter of the disputed contract is within the
> municipality's power and is not illegal. The municipality is bound by its dealings
> even if that power had been exercised in an irregular fashion or in disregard of
> directory provisions in its charter regarding the exercise of that power. *Webb* found
> that the township had the authority to provide funds to purchase the snow plows at
> issue, that the purchase of the snow plows was within the legitimate needs of the
> township, and that the irregular exercise of the township's contracting procedures
> would not afford the township the opportunity to rely upon Ultra vires as a defense
> to plaintiff's request for payment for the two snow plows. It was further pointed out
> that the township had retained the benefits of the allegedly illegal proceedings. Thus,
> it seems that Michigan falls within the general rule that while the doctrine of estoppel
> is inapplicable to Ultra vires acts, it will be applied to bind the municipality if the act
> is within the municipality's general powers, but is performed in an irregular fashion
> or in an unauthorized manner.

*Parker*, 231 N.W.2d at 428–29 (internal citations and quotation marks omitted).

In the present case, the Defendants executed two loan agreements with the Plaintiff for

loans of almost $1,000,000 for the purpose of purchasing real property and redeveloping

downtown Stevensville. Under Michigan law, villages have the power to purchase and develop

real estate for public purposes. *See* M.C.L. § 67.4. The Defendants correctly concede that they

had the power to take out loans for the purpose of redeveloping downtown Stevensville and that

the loan agreement in question was not ultra vires.  (Defs.' Sur-Reply 3, ECF No. 81-1.)

Nonetheless, the Defendants emphasize that they improperly executed the loan agreements

without obtaining the authorization of the Michigan Department of Treasury. In the Defendants'

23

view, the loans are, therefore, void and unenforceable. As reviewed above, Michigan case law does not support this conclusion. "'In an action on a contract which is not ultra vires, a municipal corporation may not shield itself behind a defense based on the manner in which the contract was made, and retain the benefits of the contract, without tendering at least a reasonable compensation for the benefits received.'" *Hatch*, 17 N.W.2d at 739 (quoting *Webb*, 215 N.W. at 45). The Defendants are estopped from denying the validity of the loans agreements.[4] They retained the benefits of the loan agreements, used a portion of the loan proceeds to purchase real estate in downtown Stevensville for the purposes of redevelopment, and refused to repay the loan to the Plaintiff. "If under all the circumstances, the acts of the public body have created a situation where it would be inequitable and unjust to permit it to deny what it has done or permitted to be done, the doctrine of estoppel will be applied to the municipality." *Parker*, 231 N.W.2d at 428 (quotation marks omitted). With these principles in mind, the Court will find that the Defendants are obligated to repay the loan proceeds to the Plaintiff.

Such a finding is consistent with decisions of Michigan's appellate courts. In *Webb*, the

---

[4] The Michigan Court of Appeals in *Parker* stated:

One adverse to the municipality and seeking application of the doctrine of estoppel must show a good faith reliance upon the municipality's conduct, lack of actual knowledge or lack of the means of obtaining actual knowledge of the facts in question, and plaintiff must show a change in position to the extent that plaintiff would incur "a substantial loss were the local government allowed to disaffirm its previous position."

231 N.W.2d at 428 (quoting 2A C. Antieau, Municipal Corporation Law § 16A.01, pp. 16A–6 (1973)). Although the Michigan Supreme Court has not applied this test when considering the application of the doctrine of estoppel against a municipal corporation, assuming it applies in this case, the Plaintiff satisfies its requirements. Neither party disputes that the Plaintiff relied in good faith on the Defendant's conduct. The Plaintiff questioned the Defendants concerning their authority to take out a loan and the Defendants, through the village attorney and the actions of their Village Council and Village Manager, affirmed their authority to enter into a loan agreement. Based on these representations, the Plaintiff loaned the Defendants almost $1,000,000.00, more than half of which the Plaintiff will not recover if the Defendants are permitted to disaffirm their previous position.

24

defendant township purchased two snowplows from a local dealer. 215 N.W. at 44. Officials from the township ordered the snowplows and used them for three consecutive winters but refused to pay the remaining balance on their account when it became due. *Id*. The Supreme Court of Michigan combined the case with a separate suit in which the same officials had hired two trucks to "haul gravel on a certain highway job." *Id.* The trucks were employed for 51 days, but when the full balance of the township's account became due, the township officials failed to pay the remaining balance. *Id.* The court observed that the defendant township clearly had the power to provide for the development and maintenance of roads and emphasized that the township "accepted, used, retained, had the benefit of, and partly paid for [the snowplows and trucks] without complaint or protest, until pressed by litigation to pay the balance." *Id.* at 46. Nonetheless, the defendant township argued that because its agents did not observe the prescribed statutory procedures for municipal corporations entering into a contract, the contracts for the snowplows and the trucks were unenforceable. *Id.* at 45–46. In response to this argument, the court stated, "[i]n an action in a contract which is not ultra vires[,] a [municipal corporation] cannot shield itself behind a defense based on the manner in which the contract was made, and retain the benefits of the contract, without tendering at least a reasonable compensation for the benefits received." *Webb*, 215 N.W. at 45. In conclusion, the Supreme Court of Michigan affirmed the trial court and ordered that the defendant township tender reasonable compensation to the plaintiffs. *Id.* at 46.

In *Hatch*, the defendant school district hired the plaintiff contractors to furnish hardware, lumber, and other materials, and install heating and plumbing equipment in a new school building under construction. 17 N.W.2d at 736–37. The plaintiffs furnished the labor and

material as required by the contract. *Id.* at 737. The defendant failed to pay the plaintiffs for their services. *Id.* At trial, the plaintiffs sought payment of the remaining balance owed to them pursuant to the contract. *Id.* The plaintiffs were successful and the defendant appealed the judgment. *Id.* At the outset, the court found that the defendant had express authorization to borrow money to pay for a school site or to erect school buildings. *Id.* at 738. On appeal, the defendant argued that contracts relied upon by the plaintiffs were void because the defendant "did not advertise for and obtain competitive bids for furnishing the material and performing the services" as required by Michigan statute. *Hatch*, 17 N.W.2d at 740. Quoting *Coit v. City of Grand Rapids*, 73 N.W. 811 (Mich. 1898), the *Hatch* court rejected this argument, holding that "[a] municipality cannot retain the benefits of a contract which has been fully performed by the other party, and which is neither malum prohibitum nor malum in se, and at the same time deny the validity of the contract because of defects in the manner of its execution." *Hatch*, 17 N.W.2d at 742. The court affirmed the judgment of the trial court and ordered the defendant to tender reasonable compensation to the plaintiffs. *Id.* at 743.

　　More recently, in *Highland Park Policemen & Firemen Retirement System v. City of Highland Park*, No. 252424, 2006 WL 1709335 (Mich. Ct. App. June 22, 2007), a Michigan court of appeals considered the defendant city's argument that the promissory note entered between the parties was "illegal and unenforceable because it was not signed by specified city officials and because it was not pre-approved by state authorities" pursuant to state statute. In *Highland Park*, the plaintiff provided a loan to the defendant city in 1994, which the defendant failed to repay at the agreed upon interest rate. *Id.*, at *1. The plaintiff agreed to forego receipt of the interest payments in exchange for the defendant's promise to grant the plaintiff  "a [two

percent] increase in pension benefits for 8 years based upon the pension payroll, in which such period will begin July 1, 1996." *Id.* After resolving the plaintiffs' claims, the court addressed the defendant's contention that the promissory note was illegal and unenforceable because the defendant failed to comply with obligatory statutory procedures prior to its execution. At the beginning of its analysis, the court noted that "[i]t is telling that defendants seek to render the agreement illegal, and consequently void, after the City has already received the benefit of the bargain." *Id.*, at *3. Citing *Parker*, the court continued:

> A municipality is estopped from denying liability for services or goods it has obtained, after accepting the benefits of their receipt, by asserting an ultra vires defense, if the service or goods are within the municipality's power to procure and not illegal in nature, even if the municipality's power has been exercised in an irregular fashion to secure the goods or services. We conclude that having received the benefit of the bargain, defendants are estopped from asserting that the promissory note is illegal when, given the circumstances of the case, their acts have created a situation where it would be inequitable and unjust to permit them to deny what they have done or permitted to be done.

*Id.* (internal citations, quotations, and alterations omitted). Therefore, the court concluded that the promissory note was enforceable.

*Webb*, *Hatch*, and *Highland Park* stand for the proposition that a municipal corporation is estopped from denying the validity of a contract where the contract has been executed and the municipal corporation retains the benefit of that contract, even if the contract was entered into in an irregular fashion. The cases cited by the Defendants do not undermine this principle of Michigan law. The Defendants cites *Merrill v. Town of Monticello*, 138 U.S. 673, 686–87 (1891), and *District Township of Doon v. Cummins*, 142 U.S. 366, 370–79 (1892). *Merrill* and *Doon* concern Indiana and Iowa law respectively and are consequently not binding with respect to the interpretation of Michigan law. Moreover, unlike the present case, *Merrill* and *Doon* are

27

concerned with ultra vires acts on the part of the municipal corporations. In those cases, the town of Monticello and the township of Doon did not exercise their power to issue bonds in an irregular manner. Rather, the town of Monticello and the township of Doon had *no* power to issue the bonds in the first place.

The Michigan cases cited by the Defendants are of limited relevance to the case at hand for similar reasons. In *Arbuckle-Ryan Co. v. City of Grand Ledge*, 81 N.W. 358 (Mich. 1899), the defendant city entered into a contract with a construction company for the purchase of an engine. *Id.* at 358. The construction company assigned its interest in payment to the plaintiff and the plaintiff sought to recover on the contract. *Id.* In response, the defendant argued that the contract was void and unenforceable because the formation of the contract was an *ultra vires* act as it caused the city to exceed its statutory limit on taxation. *Id.* at 359. The court agreed with the defendant, finding that "[t]here was . . . an absolute want of authority to enter into the contract, because the limitation of taxation had been reached." *Id.* (citing *Trump Mfg. Co. v. Village of Buchanan*, 74 N. W. 466 (Mich. 1898)). Continuing, the court distinguished the fact pattern in *Arbuckle-Ryan* from that in *Coit v. City of Grand Rapids*, 73 N.W. 811 (Mich. 1898). In *Coit*, the *Arbuckle-Ryan* court noted, "[t]he contract . . . was within the power of [the] municipality to make. *Its action was merely irregular*." *Arbuckle-Ryan Co.*, 81 N.W. at 359 (emphasis added). In contrast, in *Arbuckle-Ryan* the charter prohibited the making of contracts or incurring obligations beyond a specified rate of taxation. *Id.* The contract for the purchase of the engine was therefore "wholly ultra vires." *Id.*

Similarly, the contract at issue in *McCurdy v. Shiawassee County*, 118 N.W. 625 (Mich. 1908), was found to be wholly *ultra vires*. Using *McCurdy* as an example, the court in *Hatch*

28

explained the difference between a contract that was *ultra vires* versus a contract that was merely

formed in an irregular manner:

> In *McCurdy* . . . , plaintiff sought to recover against Shiawassee county on certain promissory notes given by the treasurer of the county pursuant to a resolution to borrow the money, passed by the board of supervisors. The board of supervisors had no power to borrow money for current expenses. Lacking such powers, the action of the board was held to be ultra vires. *It was not an attempt to act within its powers, merely carried out in an unlawful manner. The power to act was lacking in the first place.*

*Hatch*, 17 N.W.2d at 739 (emphasis added). The *Hatch* court's distinction between acts that are

wholly *ultra vires* versus acts performed in an irregular manner limits the relevance of *Niles*

*Waterworks v. City of Niles*, 26 N.W. 525 (Mich. 1886) to the case at hand as well.

"'The good faith of government should never be held less sacred than that of individuals.

Where the executed contract is neither malum in se nor malum prohibitum, but can only be

avoided because of defects in the manner of its execution, the corporation cannot retain the

benefits and deny its authority.'" *Di Ponio*, 30 N.W.2d at 852 (quoting *Am. LaFrance & Foamite*

*Indus., Inc. v. Village of Clifford*, 255 N.W. 596, 597 (Mich. 1934)). With these principles in

mind, the Court finds that the municipal Defendants are obligated to repay the loan proceeds to

the Plaintiff.


**CONCLUSION**

For the reasons stated above, the Court GRANTS IN PART the Plaintiff's Motion for

Summary Judgment [ECF No. 69], DENIES IN PART the Defendants' Cross-Motion for

Summary Judgment [ECF No. 71], and withholds ruling on the issue of damages until there is an

evidentiary hearing and/or further briefing on the issue by the parties. The Court SETS this

matter for a telephonic status conference to discuss the issue of damages at 11:00 AM on July 11, 2013, before Judge Theresa L. Springmann. The Court will initiate the call.

      SO ORDERED on May 23, 2013.

                 s/ Theresa L. Springmann
                THERESA L. SPRINGMANN
                UNITED STATES DISTRICT COURT
                FORT WAYNE DIVISION